(No. 47960.—

ALLAN L. BLAIR *et al.*, Appellees, v. DANIEL WALKER, Governor, Appellant.

*Opinion filed May 28, 1976.—Rehearing denied June 28, 1976.*

2

SCHAEFER, J., took no part.

Thomas P. Sullivan and Larry M. Wolfson, of Chicago (Jenner & Block, of counsel), for appellant.

Allan L. Blair, of Chicago, and Paul Heller, of Wexler, Wexler and Heller, of Chicago, for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, Allan Blair and David Gray, brought an action for defamation against defendant, Daniel Walker, the Governor of the State of Illinois. The allegedly libelous statements were contained in two press releases. The Governor moved to dismiss the complaint on the ground that he was protected by an absolute privilege when publishing the statements in question. The trial court denied the motion, holding that the Governor had only a conditional privilege. The case was certified for immediate appeal under our Rule 308 (58 Ill.2d R. 308), and was transferred to this court under Rule 302(b) (58 Ill.2d R. 302(b)).

This case is before us on the pleadings. The complaint states that both plaintiffs are attorneys who are also

licensed real estate brokers. It further alleges that the plaintiffs have a good reputation in the community in regard to their dual professions. Plaintiffs, as attorneys, represented D.R.G., Inc., in the course of extensive litigation with Mrs. Lillian Ware. This litigation arose from the sale of Mrs. Ware's home to D.R.G., Inc., at a tax sale and the subsequent acquisition of a tax deed by that company.

On June 11, 1974, the defendant issued two documents to the press relating to the Lillian Ware case. The documents were entitled "News From the Office of the Governor" and bore the address and telephone number of the Illinois Information Service.

One of these documents also included the subtitle "Statement by Governor Dan Walker." The full text of that statement is as follows:

"NEWS FROM THE OFFICE OF THE GOVERNOR
(SEAL OF
STATE OF
ILLINOIS)
STATEMENT BY GOVERNOR DAN WALKER
JUNE 11, 1974

I have today instructed the Department of Registration and Education to take specific steps to save the home of a 59-year-old woman whose home is being taken by two unscrupulous men.

The two men, Allan L. Blair and David R. Gray used technicalities of the law to take the $25,000 home of Mrs. Lillian Ware in a tax delinquency case for a paltry few dollars—$59.81 to be exact.

This is not the first time Allan Blair has used tax delinquency technicalities on unsuspecting homeowners. We are going to use the law against the real lawbreakers.

Allan Blair and David Gray used a corporation for their deal. It is a corporate front. But the corporate front does not have a real estate license. This is a violation of the law. That makes their dealing and manipulation illegal. Therefore, we are asking the court to stop Allan Blair and David Gray and their corporation from evicting Mrs. Ware from her home.

The law also says that a broker should not be

involved in 'unworthiness' or 'dishonest dealing.'

We believe that Allan Blair and David Gray who are licensed brokers have violated these standards of 'unworthiness.'

For this reason I have instructed the Department of Registration and Education to take action to revoke the licenses of Allan Blair and David Gray.

They will claim they are technically within the law. But they have used loopholes. I know that the American people are tired of loopholes. This is a simple case of greed. Their actions are unconscionable.

Preying on a helpless woman in pursuit of the almighty dollar is not the conduct we expect of decent people.

We are enforcing the letter and spirit of the law against two bad actors who have used loopholes in the law in the past to line their pockets at the expense of honest hard working men and women.

We seek justice."

The second document, which was written in the form of a press account, contained substantially the same information. Plaintiffs allege that these statements were false and libelous *per se.* They also allege that the Governor made the statements maliciously and with knowledge of their falsity. Plaintiffs finally allege that their professional reputations have been injured by the Governor's actions, for which they seek compensatory and punitive damages.

The issue presented is whether Governor Walker was protected by an absolute privilege when publishing the statements in question. The trial court refused to apply an absolute privilege under the circumstances of this case, but did hold that the Governor's statements were conditionally privileged.

The defense of privilege in cases of defamation has long been recognized at common law. (See, *e.g., Spalding v. Vilas* (1896), 161 U.S. 483, 40 L. Ed. 780, 16 S. Ct. 631.) Privileged communications are generally divided into those which are absolutely privileged and those which are only qualifiedly privileged. Where the privilege is absolute,

it cannot be overcome by a showing of improper motivation or knowledge of falsity. A qualified privilege, however, is conditional upon the good faith and reasonable behavior of the defendant. Prosser, Handbook of the Law of Torts, secs. 114, 115 (4th ed. 1971).

It is readily apparent that absolute immunity represents a severe restriction of the right of the individual to be secure in his reputation. This restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability. (*Barr v. Matteo* (1959), 360 U.S. 564, 571, 3 L. Ed. 2d 1434, 1441, 79 S. Ct. 1335.) "The policy behind this defense is one of protection from harassment. Were the policy merely one of protection from liability, a conditional privilege would suffice to protect all but those public officials who act in bad faith. *** And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business." Comment, *Defamation Immunity for Executive Officers,* 20 U. Chi. L. Rev. 677, 679 (1953).

In *Spalding v. Vilas* and in *Barr v. Matteo,* the Supreme Court traced the historical development of the principle of absolute immunity. Traditionally, this immunity had been narrowly applied to legislative, judicial and certain military officers and proceedings. The privilege, however, was later extended to high executive officials. (53 C.J.S. *Libel and Slander,* sec. 102 at 165 (1948); Restatement of Torts, sec. 591 (1938).) Though this is a case of first impression in this State, in that no prior decision of this court has considered the extent of the Governor's immunity from libel actions, the doctrine of absolute privilege has been applied to various executive officers by other courts of this State. See, *e.g., McLaughlin v. Tilendis* (1969), 115 Ill. App. 2d 148; *Larson v. Doner* (1961), 32 Ill. App. 2d 471; *Haskell v. Perkins* (1911), 165 Ill. App. 144.

We are convinced that there are circumstances in which it is proper to extend absolute immunity to executive officials. Certainly the Governor of this State should be able to carry out his daily responsibilities free from concern that his actions will result in civil damage suits. What must be decided in the instant appeal is whether the Governor was acting within the scope of his official duties when issuing the statements in question.

Article V of the Illinois Constitution is relied upon by the Governor in support of his contention that the press releases of June 11, 1974, were within the scope of his official duties. That article provides: "The Governor shall have the supreme executive power, and shall be responsible for the faithful execution of the laws." (Ill. Const. 1970, art. V, sec. 8.) It is the Governor's position that, in releasing the allegedly libelous press releases, he was acting pursuant to this constitutional grant of authority by ordering subordinate State officials to take legal action against the plaintiffs.

Plaintiffs contend that the Governor has no express authority to control or discipline licensed real estate brokers. The Real Estate Brokers and Salesmen Act (Ill. Rev. Stat. 1973, ch. 114½, par. 101 *et seq.*) places the direct responsibility for the regulation of real estate brokers in the Department of Registration and Education. The Department is authorized to conduct hearings to suspend or revoke real estate brokers' licenses (Ill. Rev. Stat. 1973, ch. 114½, par. 116(a)), and to institute proceedings to enjoin violations of the Act (Ill. Rev. Stat. 1973, ch. 114½, par. 118).

Though the Governor has no specified role in the disciplinary procedure followed by the Department, he does have important duties in respect to the management of the Department of Registration and Education. The director, assistant director and superintendent of the Department are all appointed by the Governor. (Ill. Rev. Stat. 1973, ch. 127, pars. 4, 5.08, and 12.) The director

must report annually to the Governor concerning the operations of the Department. (Ill. Rev. Stat. 1973, ch. 127, par. 25.) And the director, assistant director and superintendent are subject to the removal power of the Governor. Ill. Const. 1970, art. V., sec. 10.

It is apparent that the Governor's duties encompass the general supervision of the Department of Registration and Education, and that the officers of that department can be considered subordinates of the Governor. This is borne out by the fact that the Department instituted administrative and judicial proceedings against the plaintiffs following the release of the Governor's statements. We consider communications passing from the Governor to subordinate executive officials which relate to the operation of executive departments to be statements made within the scope of the Governor's official duties. If the Governor's statements in the present case had merely been communicated to appropriate officials in the Department of Registration and Education they would have been clearly within the ambit of his absolute privilege. A far more difficult situation is presented by the present appeal, since the Governor chose to inform the public of the action he had directed the Department to take and the reasons for his decision.

The Governor has cited several cases in which executive officials were granted absolute immunity for statements contained in press releases. The leading case in this area is *Barr v. Matteo* (1959), 360 U.S. 564, 3 L. Ed. 2d 1434, 79 S. Ct. 1335, in which the acting director of the Office of Rent Stabilization was sued for defamation by two subordinate department employees whom he had suspended. The press release at issue was an announcement of the suspensions and the reasons why the employees were to be suspended. The statement also disassociated the defendant from the prior practices which were the basis of the plaintiffs' discharges. (360 U.S. 564, 567 n.5, 3 L. Ed. 2d 1434, 1439 n.5, 79 S. Ct. 1335.) The court held that

the issuance of the press release was within the "outer perimeter" of the defendant's duties and that this was sufficient to render the absolute privilege applicable. 360 U.S. 564, 575, 3 L. Ed. 2d 1434, 1443, 79 S. Ct. 1335.

The *Barr* court traced the historical development of the doctrine of absolute privilege and expressed the policy considerations which underlie the rule.

"The reasons for the recognition of the privilege have been often stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. 564, 571, 3 L. Ed. 2d 1434, 1441, 79 S. Ct. 1335.

The court then acknowledged that the question involved was a "close one" but could not state that the issuance of the press release was not an appropriate exercise of the discretion vested in an officer of defendant's rank. (360 U.S. 564, 574, 3 L. Ed. 2d 1434, 1443, 79 S. Ct. 1335.) The "closeness" of the question in *Barr* resulted from the fact that the defendant held a position below cabinet or equivalent rank. Only one of the four justices who dissented from the majority opinion opposed the application of absolute privilege to executive officials of any rank. (360 U.S. 564, 586-87, 3 L. Ed. 2d 1434, 1449-50, 79 S. Ct. 1335 (Brennan, J., dissenting).) The remaining dissenters approved the application of an absolute privilege to officials of cabinet rank and above. 360 U.S. 564, 578, 3 L. Ed. 2d 1434, 1445, 79 S. Ct. 1335 (Warren, C.J., dissenting); 360 U.S. 564, 592, 3 L. Ed. 2d 1434, 1453, 79 S. Ct. 1335 (Stewart, J., dissenting).

The present defendant quite obviously occupies a higher ranking executive position than the defendant in *Barr*. The supreme executive power of this State is vested in the office of the Governor, and he is responsible for the faithful execution of its laws. (Ill. Const. 1970, art. V, sec. 8.) His duties encompass the supervision of the vast governmental apparatus which comprises the executive branch of our State government. The performance of these functions necessarily entails numerous exercises of discretionary judgment. The Governor must be afforded an absolute privilege commensurate with the scope of the discretion he is required to exercise if the goal of unrestrained and fearless administration of government is to be achieved.

We hold that the Governor is protected from actions for civil defamation by an absolute privilege when issuing statements which are legitimately related to matters committed to his responsibility. We further hold that the Governor was acting within the scope of this privilege when issuing the press releases relating to the plaintiffs. This court is not unaware of the fact that press releases can result in great damage to an allegedly defamed individual due to the wide dissemination the libel receives. It is, however, a truism that "[t]he effective functioning of a free government like ours depends largely on the force of an informed public opinion." (*Barr v. Matteo,* 360 U.S. 564, 577, 3 L. Ed. 2d 1434, 1444, 79 S. Ct. 1335 (Black, J., concurring).) The defendant, as Governor, is frequently required to communicate to his constituency—the people of this State. We cannot say that the Governor went beyond the bounds of the inherent, discretionary authority of his office by informing the public of the actions he had directed to be instituted against the plaintiffs.

We emphasize that today's decision is not an endorsement of either the tenor or the content of the defendant's statements concerning the plaintiffs. The Governor's position could undoubtedly have been expressed to the people

with language less calculated to injure the plaintiffs' personal and professional reputations. While it is unfortunate that the application of executive immunity may occasionally deny relief to a deserving individual, the sacrifice is justified by the public's need for free and unfettered action by its representatives.

Therefore, the decision of the circuit court of Cook County is reversed, and the cause is remanded with directions to enter an appropriate order.

*Reversed and remanded, with directions.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.