EDWARD A. GEICK, Plaintiff-Appellant, v. JAMES W. KAY, Indiv., and as President of the Board of Trustees of the Village of Lake Zurich, *et al.*, Defendants-Appellees.

Second District   No. 2—91—1396

Opinion filed November 5, 1992.

Stanley H. Jakala, of Berwyn, for appellant.

Martin G. Durkin, Jr., of Burke, Bosselman & Weaver, of Chicago (Mark E. Burkland, of counsel), and James L. DeAno, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellees.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Edward A. Geick, filed a four-count complaint in the circuit court of Lake County against defendants, James W. Kay, as presi-

dent of the board of trustees of the Village of Lake Zurich and individually, and the board of trustees of the Village of Lake Zurich (Board). The complaint sought damages for libel *per se*, libel *per quod*, invasion of privacy, and intentional interference with prospective economic advantage. All four counts were eventually dismissed with prejudice. A later count for breach of contract was voluntarily dismissed by plaintiff, and this appeal followed. The issues involve whether plaintiff stated a cause of action for these counts and/or whether any defenses bar recovery.

Count I of the complaint based on libel *per se* alleged that plaintiff served as village administrator for the Village of Lake Zurich (Lake Zurich). Due to differences arising between plaintiff and defendants, the parties agreed that plaintiff would resign on January 31, 1990, in conjunction with a "separation agreement" (separation agreement). The separation agreement provided that neither plaintiff nor Lake Zurich would make any statements to the public or media regarding plaintiff's resignation, plaintiff's alleged involvement in a Federal court case, or plaintiff's previous employment as an administrator in Wisconsin. It was alleged that the separation agreement required that neither the Board president nor members would provide a negative or critical reference for plaintiff and that any prospective employer would be told that as a matter of policy no recommendation or reference, positive or negative, would be given.

It was alleged that defendant Kay implied plaintiff was not trustworthy when Kay made certain statements quoted in the *Daily Herald* newspaper on February 3, 1990. Kay stated:

"I think a key element in finding a village administrator is the word trust. *** I say that word because that's how I feel. It's very, very important. I'll look at personality even before I look at credentials. It's been a difficult job for me to inherit the mess this town is in. *** You must feel that you can trust your staff in a situation like this and turn to them for guidance."

It was alleged that Kay made similar remarks regarding the need for trust in an administrator on February 8 and 9, 1990, to two other newspapers.

The complaint further alleged that in an article in the Chicago Sun-Times newspaper on February 13, 1990, Kay stated that plaintiff resigned. Kay said that a settlement agreement had been executed in a harassment suit filed by a woman. It was plaintiff's position that all the remarks alleged in the complaint violated the separation agreement.

Plaintiff alleged that pursuant to his April 17, 1990, application for a position as director of the Lake County storm water management committee, he interviewed for the job in July 1990. Plaintiff claimed that certain allegations relating to Kay's statements resurfaced. Plaintiff was required to respond to the allegations as being "politically motivated." On August 3, 1990, Kay told a newspaper that the suggestion of politics was "offensive" but declined to elaborate because of the separation agreement. He said, "There was a serious sexual harassment charge. There were a lot of factors that played into it."

It was alleged that Kay issued a press release on August 8, 1990, on Lake Zurich letterhead paper to a newspaper which implied that plaintiff was a liar. The press release addressed the resignation of plaintiff, the suggestion of "politics" in Lake Zurich's decision-making process, the sexual harassment lawsuit and its settlement, and the involvement of Kay and not the plaintiff in the Lake County sewer system negotiations. Kay again referred to a settlement in the sexual harassment suit on August 23, 1990, to another newspaper. On August 24, 1990, Kay told a newspaper that as a resident of Lake County, he "would not be happy if Geick were to get the job." He would vote "no, no question, no hesitancy," if he were on the committee.

It was alleged that these remarks violated the separation agreement. The characterizations of plaintiff as untrustworthy and references to the Federal lawsuit were alleged to impute traits of disloyalty and general unfitness for employment at a supervisory level. In paragraph 22 it was alleged that defendants "maliciously and intentionally and in utter disregard to their truth or falsity, caused the publication of false statements in violation of the separation agreement." Plaintiff sought punitive damages under count I.

Under count II for libel *per quod* the same allegations of count I were realleged. Plaintiff claimed he was forced to withdraw his application for director because of the violation of the separation agreement. Count III alleged an invasion of privacy by publication of a private fact. Count IV alleged tortious (intentional) interference with prospective economic advantage.

Defendants filed separate motions to dismiss the complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). Under the section 2—615 motion, defendants claimed plaintiff failed to state a cause of action under any count. In the section 2—619 motion, defendants raised absolute privilege; fair comment; innocent construction; opin-

ion; and the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 et seq.). At a hearing the court indicated that it was granting the motions for counts I, II and III, due to a failure to state a cause of action, privilege, and innocent construction. These counts were dismissed with prejudice on June 10, 1991; however, the order does not recite the grounds. Plaintiff was allowed to replead count IV.

Plaintiff filed a first amended complaint wherein he alleged tortious (intentional) interference with prospective economic advantage (count IV) and breach of contract (count V). Plaintiff sought punitive damages under both counts. Pursuant to defendants' section 2—615 motion, count IV was dismissed with prejudice on September 18, 1991. With respect to count V, all claims for damages, with the exception of nominal damages, were dismissed with prejudice and claims against defendants individually were dismissed with prejudice. Plaintiff was allowed to replead count V.

On November 13, 1991, count V was dismissed pursuant to plaintiff's section 2—1009 motion of the Code. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1009.) A Rule 304(a) finding was entered with respect to the other orders and this appeal followed. 134 Ill. 2d R. 304(a).

Prior to addressing the arguments with respect to counts I, II, and III, we note that the June 10, 1990, order does not specify whether the counts were dismissed under section 2—615 or 2—619 of the Code. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.) Both motions are cited in the first paragraph of the order. The oral pronouncements by the court also indicate that dismissal was proper under either motion, and the parties have argued under both sections. Despite this lack of clarity, a reviewing court may affirm a correct decision for any reason appearing in the record regardless of the basis relied upon by the trial court. *Weber v. Cueto* (1991), 209 Ill. App. 3d 936.

■ In considering a motion to dismiss under section 2—615, all well-pleaded facts in a complaint must be taken as true with all inferences from it to be drawn in favor of the nonmovant. (*Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455.) A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief. (*Meerbrey*, 139 Ill. 2d at 473.) This broad statement, however, should not be construed as an adoption of notice pleading. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438.) The granting of a motion to dismiss is within the sound

discretion of the trial court. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407.

■ Like a motion brought under section 2—615, a motion to dismiss under section 2—619 admits all well-pleaded facts. (*In re Marriage of Hoppe* (1991), 220 Ill. App. 3d 271.) The purpose of a section 2—619 motion is to provide a mechanism to dispose of issues of law or easily proved issues of fact, and the cause of action should not be dismissed on the pleadings unless it is clearly apparent that no set of facts can be proved which will entitle a plaintiff to recover. (*Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 615.) Under section 2—619(a)(9) of the Code, an action may be dismissed on the ground that a claim asserted is barred by other affirmative matter avoiding the legal effect or defeating the claim. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) "Affirmative matter" includes something in the nature of a defense that completely negates the alleged cause of action. *Brown*, 218 Ill. App. 3d at 616.

■ No affidavits were filed in support of defendant's section 2—619 motion. However, where the section 2—619 motion is made on grounds appearing on the face of the pleading attacked, the motion need not be supported by affidavit. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a); *Hoppe*, 220 Ill. App. 3d at 284.) Defendants' memorandum in support of their motion included copies of pertinent provisions of the Lake Zurich village code and documents from the sexual harassment lawsuit which also sufficed to support consideration of the motion. (See *Christmas v. Hughes* (1989), 187 Ill. App. 3d 453.) Furthermore, plaintiff did not object below to the lack of affidavits, nor does he raise the matter on appeal. The lack of affidavits is waived. See *Hays v. Louisiana Dock Co.* (1983), 117 Ill. App. 3d 512.

■ Counts I and II sought recovery under libel *per se* and libel *per quod*. To recover under libel *per se*, the statements that form the basis of the action must falsely charge the plaintiff with misconduct or incapacity in words so obviously and naturally harmful that they are actionable without the proof of special damages. (*Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402.) There are four categories of words that constitute libel *per se*. (*Costello*, 125 Ill. 2d at 414.) Only two of those categories are relevant here: words or statements which impute unfitness or want of integrity in performing the duties of an office and those which impute a lack of ability in a person's business, trade or profession. (*Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753.) Whether the particular language used is defamatory *per se* is a question of law to be determined

by the court. See *Costello*, 125 Ill. 2d at 414; *Powers v. Delnor Hospital* (1986), 148 Ill. App. 3d 844.

■ Defendants point out, and plaintiff concedes, that plaintiff is a public official who must plead and prove actual malice on the part of defendants. (See *Colson v. Stieg* (1982), 89 Ill. 2d 205.) Statements are made with actual malice when they are made with knowledge of their falsity or with reckless disregard of whether the statements were false. (*Reed v. Northwestern Publishing Co.* (1988), 124 Ill. 2d 495.) Although defendants contend that plaintiff failed to allege a cause of action under section 2—615 because plaintiff made only a bare allegation of actual malice, we disagree. Unlike *Suchomel v. Suburban Life Newspapers, Inc.* (1968), 40 Ill. 2d 32, plaintiff pled a factual allegation of "reckless disregard to their truth or falsity" in making the "false statements." (See *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257.) Plaintiff also included supporting facts, unlike *Matchett v. Chicago Bar Association* (1984), 125 Ill. App. 3d 1004, because plaintiff set forth the particular words alleged to be defamatory (*O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032), and incorporated by reference the articles in question (*Coursey*, 40 Ill. 2d at 268). Although plaintiff did not make the allegation of actual malice with respect to each statement, he did refer to "false statements" in paragraph No. 22. While he could have clarified which statements he meant to include in this allegation, we find that plaintiff sufficiently pled a cause of action in libel under section 2—615. See *Colson*, 89 Ill. 2d at 215-16; *Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009.

Plaintiff argues that the statements were libelous under the innocent construction rule; that they were not opinion; that truth is not a defense due to the separation agreement; and absolute privilege does not apply. We begin our review with absolute privilege as we find it dispositive of the issue.

■ The issue of privilege is an affirmative defense, and it may be raised by and determined upon a motion to dismiss under section 2—619. (*O'Donnell*, 145 Ill. App. 3d 1032.) An absolutely privileged communication is one in respect of which, by reason of the occasion on which or the matter in reference to which it is made, no remedy can be had in a civil action. (*Weber*, 209 Ill. App. 3d 936.) An absolute privilege cannot be overcome by a showing of improper motivation or knowledge of falsity (*Blair v. Walker* (1976), 64 Ill. 2d 1), *i.e.*, made with malice (*Weber*, 209 Ill. App. 3d at 942).

Absolute privilege is a defense in a defamation action against government officials. (*Morton v. Hartigan* (1986), 145 Ill. App. 3d 417.)

Absolute immunity, or privilege, represents a severe restriction on the right of the individual to be secure in his reputation. (*Blair*, 64 Ill. 2d at 6.) The restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability. (*Blair*, 64 Ill. 2d at 6.) Courts have held that an official of the executive branch of the Federal, State or local governments cannot be held liable for statements made within the scope of his official duties. (*Dolatowski v. Life Printing & Publishing Co.* (1990), 197 Ill. App. 3d 23.) Absolute privilege regarding communications made within the scope of official duties has been extended to mayors of Illinois municipalities or chief administrators. *Springer v. Harwig* (1981), 94 Ill. App. 3d 281; see *Loniello v. Fitzgerald* (1976), 42 Ill. App. 3d 900.

Defendant Kay, as president of the Board, was also designated as the mayor. (Lake Zurich, Ill., Village Code, ch. 4, par. 1—4—3(A)(1) (19____); Ill. Rev. Stat. 1989, ch. 24, par. 3—12—2.) As an official of the executive branch of a local government, Kay cannot be held liable for statements made within the scope of his official duties. (*Dolatowski*, 197 Ill. App. 3d at 28.) Plaintiff does not deny that absolute privilege applies to Kay in his capacity as president of the Board/mayor of Lake Zurich, but argues that Kay did not act within the scope of his official duties when making the statements.

First, plaintiff distinguishes *Blair, Loniello* and *Springer* on their facts. Plaintiff distinguishes *Blair* (64 Ill. 2d 1) on the ground that Kay's statements were not made to any village agency over which Kay had control relative to any public interest. However, *Blair* involved two press releases to the public by the governor which related to the actions the governor had directed to be instituted by a State agency against the plaintiffs. It was noted by the court that the governor was frequently required to communicate to his constituency and was acting within his inherent, discretionary authority by informing the public of his actions. Plaintiff also attempts to distinguish *Blair* on the basis of the separation agreement, an argument we address subsequently. Additionally, plaintiff contends that Kay was not addressing a city council meeting as was the case in *Loniello* (42 Ill. App. 3d 900), nor was there a lawsuit pending between plaintiff and defendants at that time to which the statements related as in *Springer* (94 Ill. App. 3d 281). Plaintiff also argues that there was no relationship between plaintiff and Kay because plaintiff was no longer employed by Lake Zurich when the statements were made.

Absolute privilege is not limited to those factual situations set forth in *Blair, Loniello* and *Springer*. The only consideration is

whether the statements made were reasonably related to Kay's duties. (*Dolatowski*, 197 Ill. App. 3d at 29; *Morton*, 145 Ill. App. 3d 417.) In *Blair* the information in the press releases came within the privilege. The newspaper report in *Springer* related to the duties of the mayor. Oral statements in the newspaper interview made by the deputy police superintendent in *Dolatowski* were reasonably related to his duties and thus covered by the privilege. Kay did not have to be addressing a board meeting to invoke the privilege as in *Loniello*, nor did litigation have to be pending between plaintiff and defendants at the time; and the fact plaintiff was no longer employed by the Village (*Morton*) did not defeat the privilege under the facts of this case.

We have examined the various statements alleged to be defamatory by plaintiff. Assuming *arguendo* that these statements were libelous, no liability may attach to defendants because of absolute privilege. As president of the Board, Kay had general supervision over all executive officers and employees of Lake Zurich. He had the power of appointment and removal of officers with the consent of the Board. Kay's statements regarding "trust" as a qualification necessary in an administrator, plaintiff's resignation, and the circumstances relating to plaintiff's resignation such as the sexual harassment lawsuit were reasonably related to Kay's duties. *Dolatowski*, 197 Ill. App. 3d at 29.

The press release explained the actions taken by defendants in settlement of the harassment suit. (See *Blair*, 64 Ill. 2d 1.) While that lawsuit was not between defendants and plaintiff, it did involve Lake Zurich and two former employees of Lake Zurich. Similar to *Springer* (94 Ill. App. 3d at 284), these statements were made within the scope of Kay's duties as Lake Zurich's president. The press release also explained Kay's involvement in the sewer system negotiations as opposed to plaintiff's. It addressed plaintiff's resignation and the question of "politics" in Lake Zurich's decision-making process. Kay was acting within the scope of his duties and was providing full public knowledge of the facts and conduct of Lake Zurich's actions. (See *Blair*, 64 Ill. 2d at 6.) Furthermore, Kay's later statement regarding the suggestion of politics as "offensive" in relation to plaintiff's resignation was reasonably related to his duties as president since it involved the removal of a village officer.

Defendant Kay's statements regarding plaintiff's candidacy for director of the Lake County storm water management committee were also reasonably related to Kay's duties as chief executive officer of Lake Zurich. Lake Zurich is in Lake County and would be affected by the committee's actions. Plaintiff claims these remarks were not privileged because they were uttered in connection with the other state-

ments alleged in his complaint. However, we have found those other statements absolutely privileged. Plaintiff also points out that when the statement was made, the committee had already approved him. We note from memorandum by plaintiff before the trial court that plaintiff had already withdrawn his application, but Kay was unaware of this fact. In examining the newspaper articles attached as exhibits to plaintiff's complaint, it is apparent that the screening committee for the storm water agency had approved plaintiff. However, full board approval had not been given, and a background check of plaintiff had been approved. We find plaintiff's distinctions of little merit and conclude that the statements were reasonably related to Kay's duties as chief executive officer of Lake Zurich.

■ Plaintiff claims that the August 24, 1990, statements, as well as the other statements, violate the separation agreement. Plaintiff contends that under *Cohen v. Cowles Media Co.* (1991), 501 U.S. 663, 115 L. Ed. 2d 586, 111 S. Ct. 2513, the defense of absolute privilege is barred because of the separation agreement. He relies on the separation agreement throughout his brief and uses it as the distinguishing feature in this case.

In *Cohen* the plaintiff approached reporters and offered to provide documents relating to a candidate in an upcoming election. Cohen made it clear that he would provide the information only upon a promise of confidentiality. The reporters promised to keep Cohen's identity anonymous and received the documents from him. The editorial staffs of the newspapers decided, however, to publish Cohen's name as the source. Cohen was fired the same day the stories appeared. The issue before the United States Supreme Court was whether the first amendment barred a promissory estoppel action against the newspapers.

The Court noted that generally applicable laws do not offend the first amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news. Promissory estoppel was a law of general applicability. It did not target or single out the press. The first amendment did not forbid its application to the press. Therefore, Cohen could seek damages against the press based on promissory estoppel. The first amendment did not confer on the press a constitutional right to disregard promises otherwise enforceable under State law. It was noted by the Court that Cohen was not attempting to use promissory estoppel to avoid the strict requirements for a libel or defamation claim. Cohen was not seeking damages for injury to his reputation or state of mind, but for breach of a promise.

After carefully examining *Cohen,* we find it is not analogous to this situation and does not bar absolute privilege as a defense to the tort claims herein. *Cohen* allowed a cause of action under promissory estoppel to proceed against the press where the press breached a promise. *Cohen* did not permit the tort action of defamation to be pursued on the basis of promissory estoppel. *Cohen* certainly has nothing to do with absolute privilege as a defense in a *libel* action, but merely holds that the first amendment does not prevent a promissory estoppel action against the press. We also point out to plaintiff that the court herein did not dismiss his breach of contract count against defendants in their official capacity. The breach of contract count may have been somewhat analogous to the *Cohen* situation; however, plaintiff has not raised an issue with respect to that count, and it is not before us. *Cohen* does not bar the defense of absolute immunity in this case. Since Kay's statements were absolutely privileged, no cause of action in defamation can be maintained against him, as president or individually, or against the Board despite the existence of the separation agreement.

■ Since we have determined that absolute privilege was a proper basis upon which to dismiss with prejudice the libel *per se* and libel *per quod* counts, we need not address the other defenses or arguments relating to these counts. Count III alleged the tort of invasion of a right of privacy by publication of a private fact, and count IV alleged intentional or tortious interference with prospective economic advantage. Count III was dismissed in the June 10, 1991, order where the basis of dismissal, section 2—615 or section 2—619, is not specified. Count IV was dismissed under defendants' section 2—615 motion. However, that motion included absolute privilege as grounds for dismissal which is affirmative matter for a section 2—619 motion. (*O'Donnell,* 145 Ill. App. 3d at 1041.) These types of hybrid procedures which combine separate motions for joint analysis and determination have been expressly disapproved and are discouraged. (*Smith v. Chemical Personnel Search, Inc.* (1991), 215 Ill. App. 3d 1078.) However, in the interests of judicial economy and since plaintiff was not prejudiced by the improper combination as he responded to the privilege issue in his memorandum before the trial court and on appeal, we consider the matter on the merits. *Smith,* 215 Ill. App. 3d at 1081.

Absolute immunity has been applied to virtually every common-law tort, including, but not limited to, malicious prosecution, tortious interference with business, false arrest, blackmail, fraud, intimidation, and invasion of privacy claims. (*Morton,* 145 Ill. App. 3d at 426-27.)

Assuming *arguendo* that counts III and IV alleged causes of actions, they are barred by the absolute privilege doctrine, which we have found applies to defendants. These counts were properly dismissed with prejudice.

In the last issue, plaintiff contends that the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 1—101 *et seq.*) does not bar the causes of actions alleged in counts I, II, III and IV because Kay acted beyond the scope of his authority. He also argues that punitive damages are not barred under the Act because of the same reasoning. Since we have determined that Kay was acting within the scope of his duties and that all four causes of action against defendants are barred based upon absolute privilege, we need not address this remaining issue.

In passing, we note that plaintiff, as appellant, has raised no issue or argument with respect to the involuntary dismissal with prejudice of that part of the breach of contract count against Kay in his individual capacity. Plaintiff voluntarily dismissed the breach of contract count against defendants in their official capacity. Defendants, however, briefly defend the involuntary dismissal on the ground that Kay, as an individual, was not a party to the separation agreement and cannot be sued in his individual capacity for its breach, citing *Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311. Since plaintiff has not raised an issue with respect to the involuntary dismissal of the breach of contract count, we do not address defendants' contentions.

Based on the foregoing reasoning, the judgment of the circuit court is affirmed.

Affirmed.

BOWMAN and DOYLE, JJ., concur.