**Arthur T. HORNER, Plaintiff,**

v.

**The COUNTY BOARD OF IROQUOIS COUNTY, ILLINOIS; Russell Rosenboom, Chairman of the County Board of Iroquois County, Illinois; Iroquois County, filed as The County of Iroquois, State of Illinois, Defendants.**

No. 91–2363.

United States District Court,
C.D. Illinois,
Danville Division.

July 29, 1993.

---

Frank J. Simutis, Ackman Marek Boyd & Simutis Ltd., Watseka, IL, for plaintiff.

William A. Allison, Allison & Kelly, Bloomington, IL, for defendants.

## ORDER

BAKER, District Judge.

The plaintiff, Ted Horner, claims that the defendants, the County Board of Iroquois County (the "Board") and Russell Rosenboom, the Chairman of the Board, deprived him of a liberty interest in his reputation without due process in the course of his discharge from employment by the county. The plaintiff also claims that the defendant Rosenboom defamed him. The defendants now move for summary judgment.

### Facts

The plaintiff was appointed as Director of the Emergency Services and Disaster Agency ("ESDA") of Iroquois County in 1968. While still Director of the ESDA, he was also appointed as the county's Zoning Administrator in 1984. As of December 31, 1990, he became semi-retired, working only part-time with the ESDA.

In 1989, a member of the Regional Planning Commission returned her mileage allowance check to the County indicating she did not deserve the money because she did not attend the meeting for which the check had been issued. Rosenboom spoke to the plaintiff; the plaintiff stated that this member often missed meetings but that the minutes of the meeting revealed that she had in fact attended that meeting. When Rosenboom learned that the plaintiff filled out all the mileage allowance forms himself, Rosenboom either suggested or directed that the plaintiff have members fill out and sign their own mileage allowance forms.

In early February, 1991, Rosenboom told the plaintiff that the mileage claims the plaintiff had previously submitted for payment on behalf of members of the Zoning Board of Appeals were submitted in error. In particular, that Karl Johnson and Ralph Dodson had been reimbursed for travel in their duties with the Zoning Board of Appeals when in fact they had not used their own vehicles but had been transported by the plaintiff in a County car. Rosenboom told the plaintiff he should attend the next meeting of the Policy and Procedure Committee on February 11, 1991.

After talking with Rosenboom and before attending the Committee meeting, the plaintiff arranged to meet with State's Attorney Gordon Lustfeldt, who told him that his job would be on the line at the Committee meeting.

At the February 11, 1991 meeting of the Policy and Procedure Committee, the plaintiff admitted that, while he was the Zoning Administrator, he had submitted forms for mileage allowances for Johnson and Dodson for trips in which they did not drive their own cars but rather traveled with the plaintiff in a car provided by the County. The plaintiff did not submit any mileage allowance forms on his own behalf for trips taken in the County car. Any money paid by the County based on the forms submitted by the plaintiff was paid to Johnson and Dodson. In the end, no action was taken by the Committee. Instead, the plaintiff was told that any action to be taken would be handled at the next Board meeting two days later and that the plaintiff could attend.

On February 13, 1991, the Board terminated the plaintiff by majority vote. The plaintiff did not attend the meeting, but sent two people to speak in his favor. At this meeting, Rosenboom said "How do you justify theft?" and "Stealing was stealing." He also compared the plaintiff's actions to that of three young purse-snatchers that had been recently apprehended in the area. Finally, he wrote and provided to the news media the following "Recommendation," which was adopted by the Board and included in its Official Report of Proceedings:

## RECOMMENDATION

The Board and I have tolerated numerous incidents of insubordination that have occurred with Ted Horner. We recognize the benefits of the outstanding volunteer ESDA organization that we have in Iroquois County and I personally have felt that we need to deal with issues and not personalities.

Several months ago a member on the Regional Planning Commission returned her mileage reimbursement check to the County indicating she did not deserve the money because she did not attend the meeting. I approached Mr. Horner about the matter and upon discovering that he was filing and signing claims for all members of the Regional Planning Commission and the Zoning Board of Appeals, instructed him to have the members of the committees sign their own claims. Recently it was brought to my attention that he was not only still signing the claims for reimbursement but was including mileage reimbursement for members of the Zoning Board of Appeals who were not driving but in fact being furnished transportation by the county and therefore not entitled to recover and [sic] expense that was not incurred. The exact number of the fraudulent claims is not known at this time; however, upon questioning, Mr. Horner admitted to the States Attorney and the Policy and Procedure Committee that the situation did occur on numerous occasions. The filing of a fraudulent claim against the County is an illegal act and as such must be dealt with in a manner consistent with previous actions in similar matters; disregarding personalities.

The States Attorney and the Policy and Procedure Committee determined it proper to ask Mr. Horner for his resignation from the position of ESDA Coordinator. He refused.

Therefore, as chairman of the County Board, it is my duty to ask the County Board members to vote in concurrence with my recommendation to declare a vacancy in the position of ESDA Coordinator, thus the removal of Ted Horner from

his responsibilities in that position, effective immediately.

I do this without hesitation, but with regret, because as trusted public officials we must maintain the integrity of the officed [sic] and positions in which we serve. We cannot have a separate standard.

Rosenboom Dep., Exhibit # 3, Official Report of Proceedings, February 13, 1991.

No written policy governs the procedure for filing mileage allowance claims. The plaintiff claims he based his actions on what his two predecessors had done in the past.

After a lengthy hearing in August, 1991, the Board considered the following questions: (1) "Did Mr. Johnson receive mileage payments when he did not incur such expense?" and (2) "Did Mr. Dodson receive mileage payments when he did not incur such expense?" Rosenboom Dep., Exhibit # 4, Official Report of Proceedings, August 13, 1991. Both Johnson and Dodson appeared with counsel. After the Board heard testimony on the matters, it determined by majority vote that Johnson and Dodson did not receive mileage payments when they did not incur such expense.

### Analysis

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984),

*cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359 (7th Cir.1988).

### Due Process

The plaintiff asserts a liberty interest in his reputation and claims that his reputation was impugned in conjunction with his discharge. Stigma plus a discharge states a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).[1]

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970); *see also Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707,

---

**1.** Mere defamation of an individual, whether by branding him disloyal or otherwise, is not sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment. *Paul v. Davis,* 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1975). The Supreme Court has rejected "the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1160–61. The Seventh Circuit has interpreted the language of the Supreme Court as establishing a "stigma

plus" test for determining whether a plaintiff has asserted a liberty interest sufficient to invoke procedural due process rights: "stigma to reputation (not itself a deprivation of liberty as defined in the Fourteenth Amendment) plus failure to rehire or discharge (not necessarily involving deprivation of property as defined in the Fourteenth Amendment) may nevertheless when found *in conjunction* state a claim under 42 U.S.C. § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process." *Colaizzi,* 542 F.2d at 973 (emphasis in original).

33 L.Ed.2d 548 (1971). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name." *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12. "In its essence, a hearing demands that the person have the right to support his allegations by argument, however brief, and if necessary, by proof, however informal." *Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir. 1980) (citing *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1976)).

### 1.

The defendants first argue that no genuine issue of material fact exists because the plaintiff's reputation could not be impugned in violation of the due process clause since the plaintiff allegedly admitted that the charges against him were true. In *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), where reports of a former police officer's suicide attempt were put in his personnel file, the Court held that:

> Assuming all of the other elements necessary to make out a claim of stigmatization under *Roth* and *Bishop* [*v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684] (1976), the remedy mandated by the due process clause of the Fourteenth Amendment is an opportunity to refute the charge. The purpose of such notice and hearing is to provide the person with an opportunity to clear his name. But if the hearing mandated by the due process clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation. No where in his pleadings or elsewhere has respondent affirmatively asserted that the report of the apparent suicide attempt was substantially false.

*Id.* 429 U.S. at 627, 97 S.Ct. at 884 (citations omitted). The defendants in the present case concede that Horner, unlike the respondent in *Codd,* does claim the defendants' statements were false. However, the defendants assert that the plaintiff has admitted to the underlying facts of the allegations against him and thus in effect to the truth of the defendants' statements.

■ It is undisputed that, at the Committee meeting on February 11, 1991, Horner admitted he submitted mileage allowance claims for members of the Zoning Appeals Board for trips in which they did not drive their own cars. *Horner's admission, however, does not include an admission of fraud, theft, or stealing.* The plaintiff has described what he said to the Committee as follows: "if that was an error, I apologize for making an error. Because no one had ever told me how to make out the claims, how to submit them. There was no written procedure and I had always submitted the claims just as they had done in the past." Horner Dep., at 14.[2] Considering the evidence in the light most favorable to the non-moving party, the plaintiff at most admitted to administrative error or lack of good judgment. Nowhere does the plaintiff admit to the characterization of his actions as theft or fraud, and his actions in and of themselves are not so clearly theft or fraud that the mere admission of the acts without more would be deemed an admission to theft or fraud.

### 2.

The defendants assert in the alternative that the Committee meeting on February 11, 1991 accorded the plaintiff all the process required under the Fourteenth Amendment. The defendants claim that the plaintiff received notice of the charges against him through the State's Attorney, Rosenboom, and the Policy and Procedure Committee, and that he was given the opportunity to be heard and to defend himself at the Committee meeting. The State's Attorney told the plaintiff that his job was "on the line." Horner Dep., at 40–41. According to the plaintiff, Rosenboom told him that the claims for Dodson and Johnson "were submitted in error" and "insinuated that they were fraudulent claims." Horner Dep., at 13, 14. The

**2.** Later in his deposition, Horner similarly stated: Yes, I admitted that I had submitted the claims as he said. And, at the time [of the Committee meeting], I apologized if I had done anything in error, because I did not think I had made any error in judgment.
Horner Dep., at 42.

Committee members told him that whatever action taken would be taken by the County Board at its next meeting. Horner Dep., at 42.

■ "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). In *Loudermill*, a tenured security guard asserted deprivation of a property interest in his employment in violation of the due process clause, and the Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495 (citations omitted). *See also* 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 17.8 (1992) (an "essential element" of due process is "adequate notice of the charges or basis for governmental action"); *see also Knight v. City of New Orleans*, 1991 WL 236551, at *2 (E.D.La. Oct. 24, 1991), *aff'd*, 968 F.2d 17 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993); *Quality Technology Co. v. Stone & Webster Engineering Co.*, 745 F.Supp. 1331, 1346 (E.D.Tenn.1989), *aff'd*, 909 F.2d 1484 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991) ("The *Roth* court noted that the type of due process guaranteed to protect one's liberty interest in his good name and reputation comes in the form of 'notice and hearing' regarding the charges giving rise to the termination."). Based on

the foregoing, notice sufficient to satisfy the due process clause, whether a liberty interest or a property interest is involved, must be "oral or written notice of the charges."

■ The charges asserted against the plaintiff Horner that impugned his reputation were first asserted at the February 13, 1991 Board meeting and consisted of charges of theft, fraud, and stealing.[3] Prior to the Board meeting, the plaintiff may have been put on notice by Lustfeldt that his job was at stake because of his actions, but he had no notice that he was being accused of theft, fraud, or stealing. Rosenboom's "insinuation" of fraud may have aroused the plaintiff's suspicions as to the possibility that such a charge would be leveled against him, but suspicion, rumor, or speculation are not sufficient notice to satisfy due process. *E.D. Systems Corp. v. Southwestern Bell Telephone Co.*, 674 F.2d 453, 459 (5th Cir.1982) ("[M]ere rumors, vague statements, and circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation, are not sufficient to constitute actual notice."). The actions to which the plaintiff admitted did not in and of themselves so clearly constitute theft, fraud, or stealing that he could naturally expect his actions to be characterized in that way. Looking at the evidence in the light most favorable to the plaintiff, the defendants' alleged notice by Lustfeldt, Rosenboom, and the Committee prior to the Board meeting may have suggested charges that the plaintiff mishandled an administrative matter, but they did not suggest charges of fraud, theft, or stealing. A genuine issue of material fact exists as to whether the plaintiff received adequate notice of the eventual charges against him which impugned his reputation.

---

**3.** The charges leveled against the plaintiff prior to the Board meeting did not stigmatize the plaintiff's reputation. *See, e.g., Hadley v. County of DuPage*, 715 F.2d 1238, 1245 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984) (statements as to the plaintiff's "failure to meet the level of management skill required to properly and efficiently administer the Department of Public Works" does not stigmatize); *Adams v. Walker*, 492 F.2d 1003, 1008–09 (7th Cir.1974) ("An unelaborated charge of 'incompetence, neglect of duty and

malfeasance of office' is of a different order of magnitude than charges of dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism or narcotics violations."); *Lipp v. Board of Educ. of City of Chicago*, 470 F.2d 802, 805 (7th Cir.1972) ("not every remark which may arguably affect one's reputation violates due process if made by a government official without a hearing, for the fourteenth amendment protects only against charges that 'might seriously damage [one's] standing and associations in his community'").

The defendant's motion for summary judgment as to Count I is denied.

## Defamation

The plaintiff alleges that the defendant Rosenboom defamed him in the statements published at the February 13, 1991 Board meeting. The defendant claims that he had an absolute privilege as Chairman to make the statements, or, in the alternative, that the statements were true.

Numerous Illinois courts have extended an "[a]bsolute privilege regarding communications made within the scope of official duties ... to mayors of Illinois municipalities or chief administrators." *Geick v. Kay*, 236 Ill. App.3d 868, 876, 177 Ill.Dec. 340, 603 N.E.2d 121 (2d Dist.1992), *appeal denied*, 148 Ill.2d 641, 183 Ill.Dec. 18, 610 N.E.2d 1262 (1993), *cert. denied*, —— U.S. ——, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993); *see, e.g., Blair v. Walker*, 64 Ill.2d 1, 349 N.E.2d 385 (1976) (Governor of Illinois); *Geick*, 236 Ill.App.3d at 868, 177 Ill.Dec. 340, 603 N.E.2d 121 (president of village board of trustees); *Springer v. Harwick*, 94 Ill.App.3d 281, 284, 49 Ill.Dec. 850, 418 N.E.2d 870 (1st Dist.1981) (village manager); *Loniello v. Fitzgerald*, 42 Ill. App.3d 900, 1 Ill.Dec. 560, 356 N.E.2d 842 (1st Dist.1976) (city mayor); *Larson v. Doner*, 32 Ill.App.2d 471, 178 N.E.2d 399 (2d Dist.1961) (city mayor and commissioners). In *Loniello*, the privilege was extended specifically to a mayor who accused the plaintiff, a local businessman, of being a 'thief,' a 'cheat,' and a 'liar' at a city council meeting addressing a proposed zoning variation for a building owned by the plaintiff. *Loniello*, 42 Ill.App.3d at 900, 1 Ill.Dec. 560, 356 N.E.2d 842; *see also Larson*, 32 Ill.App.2d at 471, 178 N.E.2d 399. In *Geick*, where the plaintiff was a former village administrator and the defendant was the president of the board of trustees of a village, the court held that "[a]s president of the Board, [the defendant] had general supervision over all executive officers and employees of [the village]" and so statements concerning the circumstances relating to the plaintiff's resignation and statements regarding 'trust' as a necessary qualification in an administrator were "reasonably related" to the defendant's duties.

*Geick*, 236 Ill.App.3d at 877, 177 Ill.Dec. 340, 603 N.E.2d 121.

As in *Geick*, the defendant had general supervision over the plaintiff since the plaintiff was an employee of the county. Also as in *Geick*, the defendant's statements concerned the plaintiff's performance as an employee. Based on the foregoing, this court holds that the defendant Rosenboom's statements at the County Board meeting accusing the plaintiff of theft, fraud, and stealing were within the scope of his official duties and thus he is immune from liability for those statements. The defendants' motion for summary judgment as to Count II is properly granted as no genuine issue of material fact remains and the defendant is entitled to judgment as a matter of law on Count II.

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket # 28–1) is granted in part and denied in part. The defendants' motion for summary judgment is denied as to Count I and granted as to Count II. The clerk is directed to enter judgment in favor of the defendant and against the plaintiff as to Count II at the termination of the case.