**William H. Haskell, Plaintiff in Error, v. Dwight H. Perkins, Defendant in Error.**

### Gen. No. 15,830.

1. SLANDER AND LIBEL—*how question of actionable character determined.* Whether or not words and writings are actionable *per se,* is a question for the court and not for the jury.

2. SLANDER AND LIBEL—*how question of privilege determined.* The question whether words and writings are privileged is a question for the court and not for the jury.

3. SLANDER AND LIBEL—*what communications are privileged.* All

communications, either verbal or written, passing between public officials pertaining to their duties, and in the conduct of the public business, are of necessity absolutely privileged.

4.  SLANDER AND LIBEL—*what not publication.*  The repetition of privileged communications at the request of the attorney and representative of the party charging libel, is not a publication which will confer a right of action.

Error to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1909.  Affirmed.  Opinion filed October 20, 1911.

**Statement by the Court.**  An action for slander and libel was instituted by William H. Haskell, plaintiff in error, in the Municipal Court of Chicago against Dwight H. Perkins, defendant in error, who was architect for the Board of Education of the City of Chicago. The statement of claim filed by the plaintiff in substance sets forth that at the time of the publication of the libel therein referred to, the plaintiff was an employe of the Board of Education as superintendent of construction, being particularly assigned to the superintending of painting and varnishing.  The defendant Perkins at and during the same time was architect for the Board of Education, and was head of the department in which the plaintiff worked.  While they were so employed the defendant Perkins prepared and filed with the Building and Grounds Committee of the Board of Education a written specification of charges wherein he, Perkins, charged the plaintiff with insubordination in his employment; the acceptance of work not properly done and not in accordance with the specifications furnished by Perkins, permitting varnish to be used which was not in accordance with instructions furnished by Perkins; and accepting work done by contractors which was not up to specifications, and contrary to the instructions issued to the plaintiff by the defendant Perkins.  Perkins also charged the plaintiff Haskell with specific and general incompetency; that the defendant was not suited either by

experience or training to fill the position that he occupied; that Haskell had pronounced work as being complete, and as having received two or more coats of varnish in accordance with the specification when as a matter of fact it had received but one.

The plaintiff, Haskell, alleged that such specifications and charges at the time they were made and filed were false, and that Perkins knew them to be false at the time he prepared and filed the same, and that the specifications and charges were drawn and filed with malicious motive for the purpose of causing the plaintiff, Haskell, to be discharged from his position, and as a result thereof, Haskell was discharged.

Haskell further alleged that he had been a contracting painter for many years in Chicago and deservedly enjoyed a reputation of being an experienced and competent painter and superintendent, and that he was as a matter of fact an experienced and competent painter, and that the charges so made greatly injured him in his business.

The plaintiff also set up in his statement of claim, that on or about the tenth day of December, 1907, the defendant, Perkins, with intent to injure the plaintiff and bring him into public scandal and disgrace, and to cause him to be discharged from his position as superintendent, and with intent to injure his reputation as a citizen and as an experienced painter, and actuated by motives of revenge and malice, in the presence and hearing of divers persons spoke and published of and concerning the plaintiff, and of and concerning the matters and premises aforesaid, the false and scandalous and malicious and defamatory words, that is to say: "Clayton II. Marks says, that if there is a grafter on the Board of Education, it is old Bill Haskell," meaning and intending thereby to charge the plaintiff of being guilty of improper conduct in his position, and that he had been guilty of what is commonly known as grafting.

On the trial, the plaintiff testified in substance that

Haskell v. Perkins, 165 Ill. App. 144.

he had been a painter in the city of Chicago thirty or forty years; he had been in the employ of the Board of Education about eleven years, and his duties were those of general superintendent of painting and construction, and showing that the specifications furnished by the architect were carried out by the contractors; to his knowledge no one ever complained in regard to his work as a painter or otherwise until charges were prepared and filed by the defendant, Perkins, as stated. In September, 1907, he received a letter from the defendant Perkins asking him to call, and in compliance with the letter the plaintiff called upon the defendant, and the defendant said that he had concluded to separate him, the plaintiff, from the service, and asked the plaintiff whether he preferred to resign or stand trial. The plaintiff then stated to him that he didn't know what charges he could have against him, to which the defendant replied that he, Perkins, was confident they could not do business and "he had to go;" that the defendant didn't need specific charges to secure the separation of the plaintiff from his position; that he had seen eleven members of the Board and they had agreed to let the plaintiff go. The plaintiff then stated that before resigning he wanted to consult some friends in regard to what he should do. Shortly afterwards the plaintiff saw the defendant and told him that he had concluded not to resign, and that he, Perkins, could prefer his charges. To this the defendant Perkins replied, "You will then oblige me to recommend your suspension to the president of the Board." Subsequently the plaintiff received another letter from the defendant wherein the defendant stated that he had been authorized by the president of the Board of Education to suspend the plaintiff from the service for incompetency and insubordination pending an investigation. Thereafter, the plaintiff had a conversation with the defendant wherein the plaintiff stated to the defendant that the defendant knew that he could

not substantiate the charges, and completed the interview by requesting more specific charges, and when and where he was incompetent and insubordinate. The plaintiff was told by the defendant that he would file specific charges, and that the plaintiff could call upon the Building and Grounds Committee for them. The plaintiff subsequently called upon the Building and Grounds Committee of the Board of Education and procured a copy of the written charges. The defendant was then called as a witness by the plaintiff and identified Exhibit ''D'' as the written charges which he prepared and filed with the Building and Grounds Committee of the Board of Education, which charges are set forth in the plaintiff's statement of claim. The plaintiff then offered in evidence Exhibit ''D'', and offered to prove in connection with it that the said charges mentioned in Exhibit ''D'' were false, and that the defendant knew they were false at the time he prepared and filed them with the Building and Grounds Committee; and offered to produce testimony tending to show that the defendant was actuated by malice in the preparation and filing of the charges. The trial court sustained an objection to the offer of Exhibit ''D'' and also to the offer of the testimony in connection with it.

The plaintiff and the witness A. S. Trude, his attorney, testified that the defendant told Trude in the office of the defendant that ''Clayton H. Marks said that if there ever was a grafter on the Board of Education, it was old Bill Haskell.'' Clayton H. Marks, the party referred to in the above statement, then testified that he never at any time made such a statement to the defendant Perkins or anything of that nature. In connection with the testimony concerning the above spoken words, and also in connection with the written charges, the plaintiff offered testimony tending to prove that the defendant had formed a hatred and dislike for the plaintiff and that he had on

several occasions manifested it by acts he had done or caused to be done.

The defendant Perkins upon taking the stand in his own behalf testified to numerous conversations with the plaintiff prior to the suspension, wherein he told the plaintiff he was convinced they could not agree, and that for the good of the service he had determined to suspend him; that he, Perkins, stated to Haskell that he was not satisfied with his work, and that his previous instructions had not been carried out to his satisfaction; that he had been waiting for three months to get the matters corrected. The plaintiff sought to prove on cross-examination when defendant Perkins first discovered plaintiff was not doing his work properly, and Haskell had refused to obey the defendant's instructions, and where and when Mr. Haskell had accepted work not according to specifications, and his personal knowledge of the facts mentioned in conversations between them. To this line of cross-examination the court sustained objections made by counsel for the defendant, on the ground that it involved a retrial of the charges before the Board of Education.

At the close of all the evidence the defendant made a motion to instruct the jury to find the defendant not guilty. This motion was granted and the jury were instructed accordingly.

SEITZ, BRYAN & WILBER, for plaintiff in error.

FRANK HAMLIN and ANGUS ROY SHANNON, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The principal contentions of the plaintiff based on errors assigned are: First, that the court erred in refusing to admit the charges and specifications prepared and filed by the defendant, and that such charges were false and the defendant knew they were false at the time he prepared and filed them, and that he was

actuated by malice in preparing and filing the charges. Second, that the court erred in restricting the cross-examination of the defendant. Third, that the court erred in directing a verdict for the defendant.

The record shows without controversy that the specifications of charges were prepared and filed by the defendant Perkins in his official capacity as architect of the Board of Education of the City of Chicago, and as head of the department in which the plaintiff was employed, in strict accordance with his official duties, and that the specifications of charges were not delivered by him to the plaintiff Haskell, but to the duly constituted and authorized committee of the Board of Education. The defendant Perkins refused to deliver the specifications to Haskell and referred him to the committee, and Haskell secured a copy from the committee.

The question whether or not words and writings are actionable *per se,* and the question whether or not they are privileged are both questions for the court and not for the jury. Roby v. Murphy, 27 Ill. App. 394; Gerald v. Inter Ocean Pub. Co., 90 *id.* 205; Young v. Lindstrom, 115 *id.* 239. It is well settled that all communications either verbal or written passing between public officials pertaining to their duties, and in the conduct of the public business, are of necessity absolutely privileged. This includes secondary evidence of their contents and testimony given, motions and pleadings and affidavits filed in trials. These matters cannot be made the basis of recovery in a slander or libel suit. Spalding v. Vilas, 161 U. S. 483; McDavitt v. Boyer, 169 Ill. 475; Young v. Lindstrom, *supra.* In our opinion the trial of the plaintiff Haskell by the Board of Education was in the nature of a judicial proceeding by the only body authorized by law to pass upon the competency and conduct of Haskell in his position in the public service, and the question whether or not he should continue to hold such position. Brenan

v. People, 176 Ill. 620; McCormick v. Burt, 95 *id.* 263; The People v. City of Chicago, 227 *id.* 445.

Assuming all the evidence in the record offered for the purpose of showing malice on the part of the defendant Perkins, with all reasonable intendments and inferences therefrom to be true, we do not find that it tends to show malice on the part of Perkins. We are of the opinion therefore that the preferring of the charges and the trial of those charges by the Board of Education did not form the legal ground for a recovery in the action under review, and the court did not err in excluding the evidence and directing a verdict as to those matters.

As to the alleged slander it may well be questioned whether the words charged in the amended bill of particulars, namely, that "Clayton H. Marks, who previous to the time aforesaid had been a member of the Board of Education of the City of Chicago, Illinois, says that if there is a grafter on the Board of Education it is old Bill Haskell, meaning the plaintiff," impute a crime and are actionable *per se.* Some authorities hold they are actionable. But passing that question which we do not find it necessary to decide, the record shows that the words were spoken to the attorney and representative of the plaintiff Haskell, alone as Perkins supposed, at the request of the attorney. Perkins requested plaintiff to leave the room so that he might talk with his attorney privately. Haskell went out of the room but left the door ajar and listened to what was said to his attorney. The attorney of the plaintiff had called upon the defendant for the purpose of discussing the subject-matter which had been the subject of conversation between plaintiff and defendant, and specifically requested information from the defendant as to any charge or complaint made pertaining to the honesty or efficiency of the plaintiff in the discharge of the duties of his position. The words were spoken on this occasion in compliance with such request. The attorney and representative of the

plaintiff upon hearing the words alleged to have been spoken stated that he did not believe them. Under such circumstances the repetition by defendant of what had been said on that subject by another did not constitute a publication of the words alleged to have been spoken, and would not of itself constitute such legal injury as to give rise to an action. Heller v. Howard, 11 Ill. App. 554; Railroad v. Delaney, 102 Tenn. 289; Haynes v. Leland, 29 Me. 233. This construction necessarily disposes of the alleged erroneous rulings on evidence, for it makes it unnecessary to consider them.

It follows from what we have said that there was no question of fact in the case to be submitted to the jury and the court did not err, therefore, in directing a verdict.

The judgment is affirmed.

*Affirmed.*