PAUL WILLIAMS III, Plaintiff-Appellant, v. DANIEL J. FISCHER, Indiv. and as Coroner of Marion County, Defendant-Appellee.

Fifth District   No. 5—90—0757

Opinion filed October 23, 1991.

CHAPMAN, J., specially concurring.

Roger C. Denton, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of Belleville, for appellant.

Byron D. Knight and Janella L. Barbrow, both of Knight, Hoppe, Fanning & Knight, Ltd., of Park Ridge, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Daniel J. Fischer, is the coroner of Marion County. As coroner, he is required to issue a death certificate following investigation of "the cause and circumstances of any death coming within his jurisdiction." (Ill. Rev. Stat. 1989, ch. 34, par. 3—3018.) In the exercise of that statutory responsibility, defendant issued a death certificate for Nina M. Cheatum, who died while residing in the nursing home where plaintiff, Paul Williams, III, was employed as a nurse. On the death certificate, defendant wrote that Cheatum had died of cardiopulmonary arrest "due to, or as a consequence of[,] medication dosage misadventure due, to [sic] or as a consequence of[,] 35 units NPH insulin administered intravenous [sic]." Defendant later issued a corrected death certificate which indicated that the "I.V. administration of 35 units NPH insulin" was a "significant condition contributing to [Cheatum's] death but not resulting in the underlying cause." Based on these statements, plaintiff filed a defamation action against defendant in the circuit court of Marion County. On defendant's motion, plaintiff's cause of action was dismissed with prejudice. Plaintiff now appeals. We affirm.

Under the common law of Illinois, an official of the executive branch of State or local government cannot be held liable for statements made within the scope of his official duties. (Dolatowski v. Life Printing & Publishing Co. (1990), 197 Ill. App. 3d 23, 28, 554 N.E.2d 692, 695.) Defendant here was such an official, and his allegedly defamatory statements were clearly made within the scope of his official duties as county coroner. What defendant wrote on Cheatum's death certificates was therefore absolutely privileged and could not serve as the predicate for a civil defamation action against him. (197 Ill. App. 3d at 29, 554 N.E.2d at 695; Morton v. Hartigan (1986), 145 Ill. App. 3d 417, 425-26, 495 N.E.2d 1159, 1164.) Accordingly, the judgment of the circuit court of Marion County dismissing plaintiff's cause of action with prejudice is affirmed.

Affirmed.

HOWERTON, J., concurs.

JUSTICE CHAPMAN, specially concurring:

I concur in the result because it is required under the supreme court's decision of *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385. I write separately for two reasons: first, I am concerned that the majority's opinion is another in a line of cases which could be construed to mean that a public official can *never* be liable for statements made in his official capacity; second, I think that the broad holding of *Blair* warrants reexamination.

I realize that our supreme court has ruled that absolute immunity for executives is necessary. *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385:

> "While it is unfortunate that the application of executive immunity may occasionally deny relief to a deserving individual, the sacrifice is justified by the public's need for free and unfettered action by its representatives." *Blair*, 64 Ill. 2d at 11, 349 N.E.2d at 389.

I submit that the *Blair* concern can be just as validly viewed from another angle. Free and open criticism of government officials has always been one of the hallmarks of a democratic society. This basic policy goal, however, is not without its limitations; critics of government officials cannot maliciously lie about those they oppose. Therefore, if a challenger in an election defames his opponent, the challenger could be subject to liability. Under the doctrine of absolute immunity, the same is not as true of the incumbent. A person holding an office is free to malign the challenger in the worst way, and if he can, by any stretch of the imagination, maintain that his statements are necessary because of his official capacity, he can wrap himself in a cloak of absolute immunity. As Chief Justice Warren said in his dissent in *Barr v. Matteo*:

> "The public interest in limiting libel suits against officers in order that the public might be adequately informed is paralleled by another interest of equal importance: that of preserving the opportunity to criticize the administration of our Government and the action of its officials without being subjected to unfair—and absolutely privileged—retorts. If it is important to permit government officials absolute freedom to say anything they wish in the name of public information, it is at least as important to preserve and foster public discussion concerning our Government and its operation." *Barr v. Matteo* (1959), 360 U.S. 564, 584-85, 3 L. Ed. 2d 1434, 1449, 79 S. Ct. 1335, 1346 (Warren, C.J., dissenting).

The doctrine of absolute immunity for executives in Illinois was adopted in *Blair*, and *Blair* relied heavily on *Barr v. Matteo*. While the

dissents in *Barr* challenge its holding on several grounds, the basis of the majority's holding is:

"We are called upon in this case to weigh in a particular context two considerations of high importance which now and again come into sharp conflict—on the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." (*Barr v. Matteo* (1959), 360 U.S. 564, 564-65, 3 L. Ed. 2d 1434, 1437-38, 79 S. Ct. 1335, 1336.)

I would submit that the majority's concern about "vindictive or ill-founded damage suits" may no longer be the compelling basis it was in the time of *Barr*. At that time a wrongfully charged civil litigant did not have the tools furnished by the present day Federal Rule 11 (Fed. R. Civ. P. 11). The 1983 amendments to Rule 11 marked a dramatic shift in attitudes toward the use of sanctions to discourage these suits (Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation & Punishment*, 74 Geo. L.J. 1313, 1321 (1986)) and were intended to reduce the reluctance of courts to impose sanctions in order to protect against such "ill-founded" actions. (Fed. R. Civ. P. 11, Advisory Committee's note.) Having once been viewed as meaningless and soft, the new provisions of Rule 11 emphasize and give teeth to its policing function. *Sanctions*, 74 Geo. L.J. at 1316.

Finally, the cases cited by the majority express a familiar concern that, absent the claim of absolute immunity, public officials would be so inundated with claims they would fail to make the pronouncements required by the duties of their offices. It is unfortunate that almost every time an aggrieved person seeks recourse, the age-old threat of "opening a Pandora's box" or the more recent and ecologically frightening "opening the floodgates of litigation" is summoned up to deny access to the courts. Sound empirical support for such claims is as rare as the threats are frequent.