DONALD L. MEYER *et al.*, Plaintiffs-Appellants, v. DOUGLAS McKEOWN, Defendant-Appellee.

Third District    No. 3—93—0912

Opinion filed August 26, 1994.

James E. Beckley & Associates, of Wheaton (James E. Beckley, of counsel), for appellants.

Robert J. Baron, of Rooks, Pitts & Poust, of Joliet (Pamela Gorcowski, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

We are asked to decide whether allegedly libelous statements published by a village trustee in a newsletter sent to 1,200 postal customers in and around the village were privileged communications. Defendant Douglas McKeown, a member of the village board of the Village of Minooka, Illinois (the village), indicated in his newsletter that Donald Meyer, plaintiff, had not completed work as promised in connection with a subdivision development and had received special favors from the village. Defendant also alluded to conflicts of interest between three village trustees and plaintiff because of business relationships and implied that plaintiff was not trustworthy.

Plaintiff brought an action against defendant, alleging that the

newsletter statements constituted interference with business expectancies, slander of title, libel *per se* and libel *per quod*. Plaintiff also complained of six false statements allegedly made by defendant at a meeting of the village board.

Defendant filed a motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)), claiming that the statements complained of were within the scope of his official duties and thus were absolutely privileged communications. The trial court dismissed the complaint with prejudice, ruling that Illinois courts have recognized public statements of governmental executive officers are privileged and that no distinction should be made between the privilege of a member of the village board and that of the president of the board. Plaintiff appeals, contending that absolute privilege, covering matters published to constituents, is limited to executive officers, not legislators, who should only have immunity for public statements made within the legislative forum or during legislative proceedings. We reverse in part and affirm in part.

A motion to dismiss under section 2—619(a)(9) admits all well-pleaded facts. (*Falk v. Martel* (1991), 210 Ill. App. 3d 557, 560, 569 N.E.2d 248, 250.) Under a section 2—619(a)(9) motion, an action may be dismissed on the ground that the claim asserted is barred by other affirmative matter avoiding the legal effect or defeating the claim, and the affirmative defense of absolute privilege is such "affirmative matter." (*Geick v. Kay* (1992), 236 Ill. App. 3d 868, 875, 603 N.E.2d 121, 127, *cert. denied* (1993), 509 U.S. 924, 125 L. Ed. 2d 726, 1113 S. Ct. 3040.) Thus, assuming the facts alleged as true, we must determine whether, as a matter of law, defendant's libelous statements were within the scope of legislative privilege under the law of Illinois.

At the heart of this case are two conflicting public policy considerations that must be balanced in reaching a decision. Those considerations were described in *Geick* as follows:

> "Absolute immunity, or privilege, represents a severe restriction on the right of the individual to be secure in his reputation. [Citation.] The restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability." 236 Ill. App. 2d at 876, 603 N.E.2d at 127.

Illinois courts have uniformly recognized a privilege for statements made by executive officers and members of local government boards and councils at regular meetings. In *Larson v. Doner* (1961), 32 Ill. App. 2d 471, 178 N.E.2d 399, a city clerk complained that she was libeled by the mayor when he presented a resolution at a meeting

of the city council to have her suspended from office for malfeasance and negligence. The court ruled that publication of defamatory matter in the course of a city council meeting was absolutely privileged.

Similarly, in *McLaughlin v. Tilendis* (1969), 115 Ill. App. 2d 148, 253 N.E.2d 85, the court ruled that remarks of a superintendent of schools made to the school board concerning the lack of teaching ability and poor conduct of certain teachers were absolutely privileged. In holding that the statements were within the duties of the superintendent of schools, the court indicated that, where the statements complained of were made between public officials in the conduct of public business, they could not be the basis for recovery in a suit at law. The court observed that official independence would be entirely destroyed if public officials were subject to vexatious litigation because of acts performed pursuant to a duty imposed by law. Accord *Donner v. Francis* (1930), 255 Ill. App. 409, 412-13.

In *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385, Illinois moved considerably beyond the narrow limits of absolute privilege recognized in earlier cases. Then Governor Walker had issued two press releases concerning actions he had directed to be instituted by a State agency against the plaintiffs. The Illinois Supreme Court held that the Governor was protected from actions for civil defamation by an absolute privilege when issuing public statements which were legitimately related to matters committed to his responsibility. After noting that absolute immunity was historically applied only to legislative, judicial, and certain military proceedings, the court stated that "[t]he Governor must be afforded an absolute privilege commensurate with the scope of the discretion he is required to exercise if the goal of unrestrained and fearless administration of government is to be achieved." 64 Ill. 2d at 10, 349 N.E.2d at 389.

The court in *Blair* also observed that the office of Governor is responsible for the faithful execution of the laws of the State and his duties encompass the supervision of the entire executive branch of State government. The court concluded that the Governor was acting within the inherent, discretionary authority of his office by informing the public of the actions he had directed to be taken against the plaintiffs to revoke their real estate brokers licenses.

Absolute immunity for libelous statements in a press release by the president of the village board of trustees was recognized in *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 603 N.E.2d 122. The court relied upon *Blair v. Walker* and the cases following *Blair* which have held that officials of the executive branch of Federal, State or local governments cannot be held liable for communications made within

the scope of official duties. See *Dolatowski v. Life Printing & Publishing Co.* (1990), 197 Ill. App. 3d 23, 554 N.E.2d 692; *Springer v. Harwig* (1981), 94 Ill. App. 3d 281, 418 N.E.2d 870.

In *Geick,* the mayor had issued a press release concerning the circumstances relating to the plaintiff's resignation as village administrator. The court held that the mayor's allegedly libelous statements were within the scope of his duties since he had general supervision of all executive officers and employees and had the power of appointment and removal. Thus, his public explanation of the reasons for actions taken by the village was reasonably related to his duties and was privileged.

We are not aware of any Illinois decisions recognizing a similar absolute privilege for public statements made by members of the legislative branch of government outside the formal legislative process. Defendant argues that the absolute privilege recognized for the executive branch of government should be extended to the legislative branch as well in order to preserve the balance of power between the three branches of government. Defendant also argues that to refuse to recognize a privilege for public statements made by legislators would have a chilling effect on the public debate of issues.

The majority of jurisdictions disagree with defendant's position. At English common law, a speech by a member of the House of Commons was privileged, but if the speech were published elsewhere and contained libelous matter, the member was liable to an action for libel. (See *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 127-28, 61 L. Ed. 2d 411, 426-27, 99 S. Ct. 2675, 2684.) The parliamentary privilege of the common law was incorporated into the United States Constitution in the speech or debate clause (U.S. Const., art. I, § 6), which has been held to prohibit inquiry only into those things said or done in Congress in the performance of official duties, *i.e.,* legislative activities done in a session of Congress relating to the business before it. *United States v. Brewster* (1972), 408 U.S. 501, 512-13, 33 L. Ed. 2d 507, 518, 92 S. Ct. 2531, 2537-38.

In *Brewster,* the Court concluded that such activities as preparing newsletters to constituents, news releases, and speeches delivered outside Congress are political in nature rather than legislative and are not protected by the Constitution. The same result was reached in *Hutchinson v. Proxmire,* where press releases announcing then Senator Proxmire's "Golden Fleece Award" were held to be actionable and not protected. The Court held that the duty of legislators to inform the public of their activities, while valuable and desirable in general terms, was not a part of the legislative function or the deliberations that make up the legislative process. Transmittal of

such information by press releases and newsletters is not privileged. *Proxmire*, 443 U.S. at 133, 61 L. Ed. 2d at 430, 99 S. Ct. at 2687.

Both the constitutional protection of libelous statements made by legislators and common law privilege were extensively reviewed in a scholarly opinion by Judge Buckley in *Chastain v. Sundquist* (D.C. Cir. 1987), 833 F.2d 311. In that case, the plaintiff brought a defamation action against a member of Congress who had released to the press a letter criticizing the plaintiff's work for a legal services organization. The court carefully reviewed the difference between the treatment historically given to legislators and that given to other officers at common law and stated:

> "[T]he distinctive obligations imposed on legislators require absolute immunity to make law, but privileges extending beyond that threaten the essential obligation to represent the people. By contrast, common law absolute immunity has always extended to those categories of officials who must face daily enforcement decisions. Put another way, the judicially created immunities for judges, prosecutors and executive officials confirm, rather than reverse, common law presumptions." (833 F.2d at 321.)

The court observed:

> "The common law commands respect not because it is old, but because it recognizes the need to limit rigorously the privileges available to the representatives of the people. This insight is not growing obsolete, and *** it is unaffected by the modern day explosion in executive branch discretionary authority." 833 F.2d at 322.

The *Chastain* court warned against "the ease with which, in the heat of political contest, an immunity from suit for common law libel becomes a license to libel." (833 F.2d at 324.) The dismissal of the defamation action against Sundquist was reversed.

The view of legislative immunity followed in the Federal courts is in accord with the Restatement (Second) of Torts section 590 (1977) and with decisions in other States as well. (See, *e.g.*, *Costanzo v. Gaul* (1980), 62 Ohio St. 106, 403 N.E.2d 979; *Adamson v. Bonesteele* (1983), 295 Or. 815, 671 P.2d 693; *Biggans v. Foglietta* (1971), 403 Pa. 510, 170 A.2d 345; Annot., 41 A.L.R.4th 1116 (1985).) A minority view holds sway in Hawaii where a broad immunity has been extended to legislators, without regard to when or where libelous statements are made, by virtue of judicial interpretation of the State constitution. (*Mehau v. Gannett Pacific Corp.* (Haw. 1983), 658 P.2d 312.) Florida and Kentucky also recognize a broad absolute privilege for members of all branches of government for statements made within the scope of their official duties. *Albritton v. Gandy* (Fla. Dist. Ct. App. 1988),

531 So. 2d 381; *Gray v. Central Bank & Trust Co.* (Ky. Ct. App. 1978), 562 S.W.2d 656.

■ We believe the better position is the majority view distinguishing the immunity available to executive officers and that of legislators. The village board of trustees is a legislative body (see *Larson v. Doner*, 32 Ill. App. 2d 471, 178 N.E.2d 399), and thus only statements made in the course of board proceedings are privileged. Accordingly, we hold that the alleged libelous statements published by defendant in a newsletter sent to constituents are not within the scope of his legislative duties as village board member and are not privileged. The trial court erred in dismissing those counts based upon the newsletter, and that portion of the dismissal order must be reversed.

■ Plaintiff also alleged that six statements made by defendant at a meeting of the village board were actionable. Plaintiff has conceded that legislative immunity does apply to debate within the walls of the legislative chamber, and dismissal of those portions of the complaint is affirmed.

We affirm the dismissal of paragraph 18 in counts I, II and III of the complaint. The remainder of the dismissal order is reversed, and this cause is remanded for further proceedings.

Affirmed in part; reversed in part and remanded.

BARRY and BRESLIN, JJ., concur.