(No. 94-CC-3084— )

JOHN T. O'CONNOR, Claimant, *v.* JOSEPH SMITH and THE
BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,
Respondents.

*Opinion filed March 8, 1996.*

*Supplemental opinion filed November 6, 1996.*

ERWIN, MARTINKUS, COLE & ANSEL (JOHN M.
WILKIE, of counsel), for Claimant.

FLYNN, PALMER & TAGUE, for Respondents.

## OPINION

EPSTEIN, J.

This is a libel action by one State official against an-
other. This intergovernmental libel claim is before us on
the Respondents' misdesignated section 2—615 motion
to dismiss which asserts, alternatively, the defenses of ab-
solute privilege and qualified privilege of public officials
for intergovernmental communications within the scope
of their official duties. Without objection by, nor preju-
dice to, the Claimant, Respondents' motion is treated as a

section 2—619 motion. For this purpose the well pleaded facts alleged in the complaint must be taken as true.[1]

Also before us is the question of this Court's subject matter jurisdiction over the count I claim against Respondent Smith, individually, who is there sued personally and not in his official capacity. This issue was raised by the Court *sua sponte* and was supplementarily briefed.

### The Allegations of the Complaint

Claimant O'Connor is the chief of the Illinois State Water Survey (Water Survey), which is situated on the University of Illinois' Urbana campus, but is actually a division of the Illinois Department of Energy and Natural Resources (DENR) and not part of the University, a fact not universally known on campus. Claimant brought this libel claim against an associate chancellor of the University individually (count I) and, under *respondeat superior*, against the University (count II). Respondent Joseph H. Smith (Smith) is the university's Associate Chancellor and Director of Affirmative Action and is the alleged tortfeasor.

The complaint alleges that Claimant was libeled by a letter that Smith wrote and published to two other officials: (1) DENR Director John S. Moore, Claimant's superior in the State government hierarchy, to whom Smith's letter was addressed, and (2) Chancellor Morton Weir, Smith's superior in the university hierarchy, to whom the letter was copied.[2]

---

[1] Respondents' motion raises only immunity defenses, which here arise on the face of the complaint rather than on extraneous facts injected by affidavit, but are nonetheless "affirmative matter . . . defeating the [tort] claim" within section 2—619(a)(9) of the Civil Practice Law (735 ILCS 5/2—619(a)(9)). Such defenses are appropriately raised by section 2—619 motion. (*Meyer v. McKeown* (1994), 266 Ill. App. 3d 324, 641 N.E.2d 1212.) Respondents' motion does not attack the sufficiency of the underlying libel claim nor the libelous characterization of Smith's letter, as a real section 2—615 motion might do. Accordingly, the Court will not address the merits of the libel action as alleged.

[2] In his briefs, the Claimant suggests without support that the Respondent Smith was responsible for the publication in various campus or town publications of the letter or of some of its contents. As nothing of this tenor is alleged in the complaint, such insinuations are improper and are disregarded by the Court.

The subject of Smith's letter was a series of complaints against Chief O'Connor that were purportedly made by (or on behalf of) Water Survey employees and that alleged various discriminatory acts by O'Connor. The complaints had been mistakenly submitted to Associate Chancellor Smith, although he and the University have no jurisdiction to investigate or act upon employment matters at the Water Survey. The letter's ostensive purpose was to forward the discrimination complaints to the DENR director, who has jurisdiction over O'Connor, and to urge action. Smith's letter urged "prompt action to resolve this troublesome situation."

The complaint alleges malice by Associate Chancellor Smith and, more or less, that his letter endorsed the substance of the discrimination complaints. The complaint specifically alleges the following excerpts from Smith's letter to be "false, defamatory and libelous" (par. 3) and that he published them with reckless disregard as to whether they were true or false" (par. 5):

"Suffice it to say, that there is a pattern of behavior which on its face is discriminatory against staff members of foreign background and, in this instance, are also people of color.

＊ ＊ ＊

Harassment and intimidation are the means by which staff members have had their well-being threatened and compromised by Chief O'Connor, according to those directly affected as well as those associated with him."

O'Connor alleges that Smith's letter resulted in his placement on a lengthy administrative leave and loss of various employment benefits.

### The Parties' Contentions

Respondents assert absolute immunity, as a matter of common law, based on Respondent Smith's status as a public official, for communications made by him within the scope of his official duties, relying on *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385 and its progeny;

Respondents claim that the letter was a proper intergovernmental communication reasonably related to Smith's duties. Respondents alternatively argue that if absolute privilege does not apply, then qualified (conditional) privilege applies here, based on the elements set forth in *Edwards by Phillips v. University of Chicago Hospitals and Clinics* (1985), 137 Ill. App. 3d 485, 484 N.E.2d 1100, and requires dismissal of O'Connor's libel action.

The Claimant disputes the applicability of absolute immunity to Associate Chancellor Smith, contending primarily that he is too far down the chain of command to be covered by the Illinois doctrine of absolute immunity for executive officials which, Claimant urges, is limited to chief executive officers and their equivalents, relying also on *Blair v. Walker, supra,* and later opinions. Claimant alternatively argues that if absolute immunity applies, Smith's publications of his letter were outside his official duties and thus unprotected by the privilege. Claimant also disputes the applicability of qualified immunity, and finally argues that his allegations of malice are sufficient to support his libel claim even if qualified immunity is held applicable.

On the jurisdictional issue, both the Claimant and the Respondents rely on *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240, as the latest and most authoritative pronouncement of our Supreme Court on this Court's jurisdiction over claims against State employees and officers individually. Both sides contend that *Healy* supports their position on count I as to Mr. Smith individually.

## I.
### Jurisdiction over the Claim against the Individual Respondent

Count I seeks a money judgment against an individual Respondent (Smith), individually, and is predicated on the claim that Smith, a State (university) employee

and official, was acting *outside* of his official government duties when he committed a common law libel.[3] Count I is thus a garden variety tort claim against an individual who just happens also to be a State university official. Because sovereign immunity does not cover that kind of tortious conduct by State employees, there is no basis for jurisdiction in this Court over this count I claim. *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240; *Currie v. Lao* (1992), 148 Ill. 2d 151, 592 N.E.2d 977.

*Healy v. Vaupel, supra*, lends no support to Claimant. *Healy* provides no basis for jurisdiction in this Court over a claim against an individual State employee for acts outside of his or her official duties. To the contrary, *Healy* holds that a claim against an individual State employee who is *alleged to have acted outside his authority or illegally* is not cloaked with sovereign immunity and is justiciable in the circuit court but, concomitantly, not in this Court.

A second analysis in *Healy* turns on the source of the legal duty on which the tort claim against the individual State employee is predicated. The Supreme Court held that where the duty sued upon itself arises from the State employment, then the individual employee is only a nominal party and sovereign immunity applies, and the claim must be brought in the Court of Claims as a claim against the State. *Healy*, 133 Ill. 2d at 313, 549 N.E.2d 1240.

Where the individual State employee is named as a "nominal" defendant in order to obtain an indirect judgment against the State, or where irrespective of the form of pleading or style of action the "real claim is against the State of Illinois itself and when the State * * * is the party vitally interested," then the action lies within this Court's exclusive

---

[3] Although count I does not explicitly allege that Smith acted outside of his university authority, it is clear from the complaint (e.g., count I omits the allegation, contained in count II, that Smith acted "within the * * * scope and course of his employment") as well as from Claimant's brief that his claim against Smith individually relies on this charge.

jurisdiction. (*Healy v. Vaupel*, 133 Ill. 2d 295, 549 N.E.2d 1240, 1247, quoting *Sass v. Kramer* (1978), 72 Ill. 2d 485, 41, 381 N.E.2d 975, 977.) *Healy* approved the formulation articulated in *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, which held that claims against individual State employees, agents or officers lie in the exclusive jurisdiction of the Court of Claims when (and only when):

"\* \* \* there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involved matters ordinarily within that employee's normal and official functions of the State \* \* \*."

In those circumstances, "the cause of action is only nominally against the employee" (*ibid.*) and the State is the real defendant which must be sued in this court.

Under *Healy*, there is no room to argue that this claim against Mr. Smith individually lies in this court. The count I action against Smith fails each of the three wings of the *Robb v. Sutton* test approved in *Healy v. Vaupel*. That would end the analysis, except that *Healy*, despite the parties' representations, is not the last word on this subject from our Supreme Court.

Two years after *Healy v. Vaupel, supra*, our Supreme Court decided *Currie v. Lao* (1992), 148 Ill. 2d 151, 592 N.E.2d 977, in which it revisited this jurisdictional issue and adopted *Healy*'s second analysis—which was also the second wing of the *Robb v. Sutton* test approved in *Healy*— as the primary standard for applying the sovereign immunity doctrine to tort claims against individual State employees. This analysis focuses on the source of the tort duty.

Under *Curry*, a tort claim against a State employee that is founded upon an independent tort duty—one that applies to the individual independent of his or her status as a State employee or officer—is unprotected by sovereign

immunity and the employee may thus be sued individually in the circuit court. Those sorts of independent tort claims are actionable against the individual employee (whether or not acting within the scope of his official duties); but those claims are outside the exclusive jurisdiction of this Court. The Supreme Court's discussion in *Currie v. Lao* bears repeating here:

"A State employee is not immunized by sovereign immunity for his own acts of negligence merely because he was acting within the scope of his employment. (*Gocheff*, 69 Ill. App. 3d at 183, 25 Ill. Dec. 477, 386 N.E.2d 1141.) the issue of when a State employee's on-the-job negligence is immunized has been the focus of numerous divergent, and sometimes contradictory, approaches in the case law. After careful study of these approaches, we conclude that the proper inquiry is to analyze the source of the duty the employee is charged with breaching in committing the allegedly negligent act. Where the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court. (*Healy*, 133 Ill. 2d at 313, 140 Ill. Dec. 368, 549 N.E.2d 1240; *American Family Insurance Co. v. Seeber* (1991), 215 Ill. App. 3d 314, 318, 158 Ill. Dec. 829, 574 N.E.2d 1222.) Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court. (See *Seeber*, 215 Ill. App. 3d at 318, 158 Ill. Dec. 829, 574 N.E.2d 1222; *Bartholomew v. Crockett* (1985), 141 Ill. App. 3d 456, 462, 86 Ill. Dec. 656, 475 N.E.2d 1035.) In other words, where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his State employment, a suit against him will not be shielded by sovereign immunity.

This distinction best preserves the spirit of the sovereign immunity doctrine. The legislative grant of sovereign immunity shields the *State* from being haled into circuit court; it is *not* a blanket grant of immunity for all State employees. The rationale behind extending the immunity to State employees in certain situations is that a suit against that employee could operate to control the actions of the *State*, thereby allowing the State's immunity to be circumvented. (See *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 36, 101 N.E.2d 71.) Limiting immunity for a State employee to situations where he breaches a duty imposed on him solely by virtue of his official position furthers this rationale, for control over the actions and policies of the State could be achieved only by controlling the employee's performance of his "official" actions. A State employee who breaches a duty he owes regardless of his State employment is no more entitled to immunity than is a private individual who breaches that same duty; the mere fact of his State employment should not endow him with heightened protection. See, also, *Postich v. Henrichs*, 267 Ill. App. 3d 236, 641 N.E.2d 975 (2d Dist. 1994)."

As applied to this case, *Curry* compels the same result reached under *Healy* (because the *Curry* test was one part of the *Healy* analysis that was applied above). In garden variety tort cases like this count I libel action, where a judgment is sought against a Respondent individually who just happens to be a State employee or State officer and who is sued on a tort duty that applies to citizens generally—here the duty not to libel another—and that does not arise peculiarly from his official status or duties, then that individual may be independently culpable and may be sued individually in the circuit court but not in this Court in that capacity.[4]

Under *Healy* and under *Curry*, this libel claim against Mr. Smith individually is or was maintainable in the circuit court and is not maintainable in this Court which lacks subject matter jurisdiction over it. Accordingly, count I, against Joseph H. Smith, individually, must be and is dismissed for want of jurisdiction. In light of this jurisdictional holding, we need not and do not address the other disputed issues relating to count I.[5]

## II.

### The Privilege Defenses

The threshold issue presented on count II is the applicability to Associate Chancellor Smith of either absolute or qualified immunity for his intergovernmental communication to Director Moore and to Chancellor Weir. The dispositive issue is the applicability of absolute privilege, since that common law privilege, as its name suggests, is absolute and thus provides immunity from suit as well as total immunity from liability in "defamation and kindred

---

[4] The Court expresses no opinion as to whether any jurisdictional vitality remains in the first *Healy v. Vaupel* standard—whether the official's alleged wrongful conduct lies within or outside his official duties—as applied either to tort claims or to other claims.

[5] This Court need not and does not express any opinion on the effect, if any, of the allegation that Smith acted outside his university duties on the privilege doctrines that were asserted as defenses to the libel claim.

torts" (*Barr v. Mateo* (1959), 360 U.S. 569, 79 S. Ct. 1335, 3 L.Ed.2d 1434). If this privilege applies to this respondent, then this case is over, as this privilege is not pierced by the malice allegation and count II concedes that Smith's letter was written and sent within the scope of his duties.[6]

In the law of executive governmental privilege, absolute privilege has been the dominant, if not exclusive, doctrine invoked by our courts. Qualified or conditional privilege has rarely been applied to government officials or employees, and it is interesting to note that respondents' alternative argument is unsupported by any applications of qualified privilege to government officials or public employees.[7]

In Illinois, the analysis commences with *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385, which is the leading and only decision by our Supreme Court on this issue. In *Blair*, our Court held as a matter of common law that the Governor has an absolute privilege for his "official acts" against defamation-type torts. *Blair* did not, however, decide what lesser public officials than the Governor, if any, also enjoy this absolute privilege.

*Blair* relied heavily on the U.S. Supreme Court's decisions in *Barr v. Mateo, supra* (which involved an acting federal agency Director) and *Spaulding v. Vilas* (1896), 161 U.S. 483, 16 S. Ct. 631, 40 L. Ed. 780 (Postmaster General); *Blair* recognized and discussed the debate in the *Barr* opinions as to whether the privilege should extend to officials below cabinet rank or its equivalent. (The *Barr*

---

[6] In count II, the Claimant specifically alleges (as well he must in order to invoke *respondeat superior* against the university) that Mr. Smith's letter was within the scope of his university employment. Accordingly, for purposes of count II as well as for count I, the Court need not and does not decide whether or not Mr. Smith's publication of the letter to the head of another governmental agency, or to his university superior, or both, falls within his official university duties. For count II, this is assumed.

[7] Qualified privilege, also sometimes called conditional privilege, provides substantial but incomplete immunity from liability, and is not an absolute bar to defamation actions. A qualified privilege does not immunize malicious defamations, nor libel *per se*, both of which appear to be alleged here.

majority held yes.) *Blair* also relied on several Illinois appellate decisions that had recognized the privilege for various executive officials: *McLaughlin v. Tilendis* (1969), 115 Ill. App. 2d 148, 253 N.E.2d 85 (superintendent of schools); *Larson v. Doner* (1961), 32 Ill. App. 2d 471, 178 N.E.2d 399 (mayor and city commissioners); and *Haskell v. Perkins* (1909), 165 Ill. App. 144 (school board architect).

While the *Blair v. Walker* opinion's reliance on *McLaughlin, Larson* and *Haskell* may arguably have been somewhat misplaced, neither those decisions nor *Blair* itself, provide any support for this Claimant's argument that the privilege is limited to chief executive officers.[8] On the other hand, none of those decisions provide any direct support for respondents' argument that the privilege applies to all executive branch officials. The *Barr v. Mateo* decision rejected the limitation of the absolute executive privilege to cabinet rank officials (360 U.S. at 572), but it is not at all clear that this aspect of *Barr* was adopted by our Supreme Court.

However, our Supreme Court in *Blair* clearly adopted the rationale for the privilege articulated in *Barr* (349 N.E.2d at 388), which remains the guiding light for application of this policy-based common law privilege:

"The reasons for the recognition of the privilege have often been stated. It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to government service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. 564, 571, 79 S. Ct. 1335, 1339, 3 L.Ed.2d 1434, 1441.

---

[8] *Haskel v. Perkins, supra,* involved a school architect as. Defendant and arguably applied qualified rather than absolute privilege, as the opinion dwells on malice and libel *per se*, which are both irrelevant under absolute privilege. *Larson v. Doner, supra,* involved a resolution passed at a city council meeting, and plainly involved legislative rather than executive privilege. *McLaughlin v. Tilendis* followed *Donner v. Francis* (1930), 255. Ill. App. 409 (V.A. hospital officials), which applied federal common law, and also relied on *Larson, supra* and *Haskel, supra.* Thus the Illinois precedent underlying *Blair v. Walker* was less than firm.

This principal, however, provides little guidance on how far down the chain of governmental command an absolute privilege is justified.

In *Barr v. Mateo*, Mr. Justice Black's concurring opinion suggested limiting the privilege to policy-making officers, on the theory of derivative immunity from the Chief Executive. (360 U.S. at 582.) Justice Black, focusing on public statements as distinguished from purely internal governmental communications, expressed great concern for the potential abuse of executive privilege by government officials, particularly abuse aimed at critics of government. He advocated giving a qualified privilege to lower-ranking officials (360 U.S. at 584):

> "Giving officials below cabinet or equivalent rank qualified privilege for statements to the public would in no way hamper the internal operation of the executive department of government, nor would it unduly subordinate the interest of the individual in obtaining redress for he public defamation uttered against him."

Neither view of Justice Black has been adopted by any court in Illinois as nearly as we can ascertain, although it is far from clear that the issue is foreclosed.

In *Colaizzi v. Walker* (1976), 542 F.2d 969, which was decided shortly after *Blair v. Walker* was decided by the Illinois Supreme Court, the Seventh Circuit reviewed the dismissal of libel claims against the Illinois Governor (Dan Walker), the Director of [the Governor's] Office of Special Investigations (Donald Page Moore), and an employee of the O.S.I. (Lauri Staples) arising out of internal communications and a press release and a news conference. The Seventh Circuit, interpreting and applying Illinois law as reflected in *Blair*, held that intergovernmental communications between these defendants were absolutely privileged. That disposed of the claim against Staples. The dismissal of the claims against the Governor was also affirmed, on the basis that his absolute immunity

covered both the internal communications and his press statement and press conference. However, the claim against Moore for his (public) news conference statements was held to have exceeded inter-official communications, which were immune. Because those public statements may have exceeded his official duties so as to be unshielded by the privilege, the claims against Moore were reinstated but remanded for further fact-finding. See 542 F.2d at 969.

Claimant relies heavily but mistakenly on *Colaizzi* to support his argument that Illinois law restricts executive absolute immunity to the highest ranking officers of the State. *Colaizzi* did nothing of the sort. Contrary to claimant's argument, the *Colaizzi* court did indeed extend the absolute immunity to the employee Staples for her intergovernmental communications.

But *Colaizzi*, like the seminal *Barr v. Mateo* decision, points up a distinction that is often glossed over. That distinction—between intergovernmental communications and public statements—arises under the second issue in the absolute privilege cases: the issue of whether the official acted within the scope of his or her duties, and thus whether the particular statement is covered by the absolute privilege. (This issue is not presented here on the pending motion to dismiss.) However, this issue is *not* a matter of the applicability of the privilege to the *official*, as the Claimant seems to argue to us; this is solely a question of the privilege's applicability to the particular *act* of the official. As the Supreme Court observed in *Barr*:

"To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails. It is not the title of his office but the duties with which the particular officer sought to be made to respond in

damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' *Spaulding v. Vilas, supra* [citation omitted]—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

This oft-quoted and oft-misapprehended aspect of *Barr v. Mateo* is little more than a statement that the privilege is no broader than the official's official duties, and that in the ordinary course it is likely that the higher the official the broader his or her duties and privilege, and vice-versa. Although this simple principle has rarely found application in Illinois (*Colaizzi* is one of the few examples), it is part of *Barr v. Mateo* that seemingly applies under *Blair v. Walker*, but in no way mitigates the threshold applicability of the privilege to lower ranking executive officials.

In the years since *Blair v. Walker, supra,* was decided in 1976, there have been critical voices in the Illinois judiciary addressing the wisdom of automatic application or extension of the executive immunity doctrine, and even of the *Blair* decision. See, e.g., *Williams III v. Fischer* (1991), 221 Ill. App. 3d 117, 581 N.E.2d 744, 745-746, concurring opinion of Justice Chapman:

"° ° ° I am concerned that the majority's opinion is another ° ° ° which could be construed to mean that a public official can *never* be liable for statements made in his official capacity; second, I think that the broad holding of *Blair* warrants reexamination.

° ° °

° ° ° critics of government officials cannot maliciously lie about those they oppose. Therefore, if a challenger in an election defames his opponent, the challenger could be subject to liability. Under the doctrine of absolute immunity the same is not as true of the incumbent. A person holding an office is free to malign the challenger ° ° ° and if he can ° ° ° maintain that his statements are necessary because of his official capacity, he can wrap himself in a cloak of absolute immunity.

° °. °

I would submit that the [*Barr v. Mateo*] majority's concern about "vindictive or ill founded damages suits" may no longer be the compelling basis it was in the time of *Barr*.

Finally, the cases ° ° ° express a familiar concern that, absent the claim of absolute immunity, public officials would be so inundated with claims they would fail to make the pronouncements required by the duties of their offices. ° ° ° Sound empirical support for such claims is as rare as the threats are frequent."

Most of the post-*Blair* decisions in Illinois have simply assumed, without analysis, that executive absolute privilege applies across the board under *Blair v. Walker.* There are simply no decisions to be found that reject immunity on executive rank grounds. On the other hand, the reporters are replete with Illinois decisions extending—or simply applying—the immunity doctrine to executive officers of less than C.E.O. rank and less than cabinet rank, starting of course with *Colaizzi v. Walker* (1976), 542 F. 2d 969 (Governor, Director, investigator), on which the Claimant here erroneously relies.

Other post-*Blair* decisions applying absolute privilege to executive officers include: *Loniello v. Fitzgerald* (1976), 42 Ill. App. 3d 900, 356 N.E.2d 842 (Mayor); *Savarirayan v. English* (1977), 45 Ill. App. 3d 105, 359 N.E.2d 236 (federal employees, physicians, applying federal law); *Glass v. Jackson* (1978), 65 Ill. App. 3d 732, 382 N.E.2d 709 (Director, Program Director, Office Chief of State agency); *Springer v. Harwig* (1981), 94 Ill. App. 3d 281, 418 N.E.2d 870 (village manager); *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 495 N.E.2d 1159 (Attorney General, 1st Asst. Attorney General, Chief of Welfare Litigation Div'n.); *Dolatowski v. Life Printing and Publishing Co., Inc.* (1990), 197 Ill. App. 3d 23, 554 N.E.2d 692 (police superintendent); *Williams III v. Fischer* (1991), 221 Ill. App. 3d 117, 581 N.E.2d 744 (county coroner); *Geick v. Kay* (1992), 236 Ill. App. 3d 868, 603 N.E.2d 121 (village board President); *Harris v. News-Sun* (1995), 269 Ill. App. 3d 648, 646 N.E.2d 8 (police detective).

Rightly or wrongly, this body of law has grown up despite the weakness of the underpinnings of *Blair v. Walker*

and even of *Barr v. Mateo*.[9] Members of this Court share some of the concerns expressed in the dissenting and concurring opinions in *Barr v. Mateo, supra,* and even some of those expressed more recently by other courts. This Court particularly questions the need to insulate lower public employees with absolute immunity, when qualified immunity might suffice to meet the policy goals of the immunity doctrines, and when statements *by* the public or individual citizens receive only qualified privilege under the constitutional immunity afforded by *New York Times v. Sullivan* and its progeny. This imbalance between the exposure to defamation liability as between public employees and their taxpaying employers is surely less today than when Mr. Justice Black pointed out the disparity in *Barr* concurrence. Still, it is hard to perceive why one level of immunity suffices for one side of the government desk but not for the other. Those considerations, however, are for the Illinois Supreme Court and not for this Court. It is for us to apply the law as it is.

Although there are arguable predicates for disputing the vitality of the body of law that has grown up around *Blair v. Walker* in Illinois, we are constrained to follow the overwhelming weight of the decision law that Illinois common law extends absolute privilege for intergovernmental communications to all executive branch officers, and thus to the Assistant Chancellor of the University of Illinois whose privilege is here in issue.

---

[9] Justice Black's concurring analysis in *Barr* is instructive on the history of this immunity doctrine in its executive formulation. His historical review of privilege law reflects a surprisingly weak and brief precedential basis for the executive privilege, unlike the legislative and judicial privileges. His research traced the legislative privilege in England back to 1399 and judicial immunity back to 1608 (360 U.S. at 579-580). The executive privilege was traced back to its inapposite origins in military law, the earliest reported English decision being *Sutton v. Johnstone,* 1 T.R. 493 (1786) (Court of Exchequer) (captain of a naval warship), and the earliest civil executive application being as late as 1895, in the English case of *Chatterton v. Secretary of State for India,* 2 Q.B. 189. That was just one year before the seminal American decision in *Spaulding v. Vilas* (1896), 161 U.S. 483, 16 S. Ct. 631, 40 L. Ed. 780, which involved our Postmaster General, and in which the Supreme Court relied exclusively on judicial immunity precedents.

We need not and do not address the application of the privilege to public statements, as not public dissemination is alleged in count II of Claimant's complaint. As our holding on the absolute privilege doctrine disposes of the count II claim, there is no reason for us to discuss the Respondents' alternative defense of qualified privilege.

The count II claim is barred by privilege and must be dismissed. Count II is dismissed.

### SUPPLEMENTAL OPINION ON PETITION FOR REHEARING

EPSTEIN, J.

Claimant has petitioned for rehearing on his count II *respondeat superior* claim for libel against the university, which is based on a letter of one of its Assistant Chancellors. We dismissed this libel claim as barred by the absolute privilege "for inter-governmental communications [of] all executive branch officers" which Illinois provides under *Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385 and its progeny. (Slip. Op., 7-12.)

Claimant now says: (1) that the court over-broadly applied the privilege, which is said to be applicable only to a "narrow category of communications" made by public officials "under express authority of law," *Zurek v. Hasten*, 553 F. Supp. 745, 748 (N.D. Ill. 1982), and (2) that the Assistant Chancellor's letter was "clearly beyond the scope of his official duties and * * * is therefore not covered by absolute privilege." (petition for rehearing, 2.)

This Court pointed out that the absolute privilege doctrine is no broader than the official's official duties under *Barr v. Mateo* (1959), 360 U.S. 569, as followed in Illinois by *Blair v. Walker, supra,* and *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976) (applying Illinois law). (Slip. Op., 9-10.) Nothing new is advanced by Claimant.

Moreover, as we also pointed out (*id.*, at 9), no issue as to the scope of applicability of this executive privilege is presented here. That issue is still not presented by Claimant's petition for rehearing, and cannot be, because count II alleges that the Assistant Chancellor's acts were within the scope of his university responsibilities. Claimant cannot be heard to argue otherwise.

Claimant's argument is legally suicidal as well as procedurally improper. The *respondeat superior* claim can never be resurrected by arguing that the alleged libel was outside the scope of its author's employment by the respondent: an employer is liable by *respondeat superior* only for the torts of its employees committed *within* the scope of their employment. Illinois adheres to this elementary, bedrock rule of law, *Pyne v. Witmer* (1989), 129 Ill. 2d 351.

Thus even if Claimant were to avoid the bar of absolute privilege by his reversal of allegations, he still shoots himself in the (other) foot with this contention, because his outside-the-scope allegation defeats his vicarious liability claim against the university as a matter of law. No reason is presented for us to reconsider our judgment dismissing Claimant's count II claim against the University of Illinois.

Claimant's petition for rehearing is denied.